G. O. WATKINS, *Planitiff in Error*, v. J. W. SIMS, *Defendant in Error.*

Opinion Filed May 14, 1921.

1. Error cannot be predicated upon the exclusion of a question if the testimony sought to be deduced is subsequently brought out.

2. Evidence that has a tendency to prove an agency, is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it.

3. Payment of a debt is not necessarily a payment of money; but that is payment which the parties contract shall be accepted as payment.

4. An amended pleading which is complete in itself and does not refer to or adopt a former pleading as a part of it, supersedes the former pleading which ceases to be a part of the record.

5. An amended pleading takes the place of a former pleading, and stops all further use thereof, as a pleading.

6. The prima facie effect of the amendment of a pleading is an acknowledgment by the pleader that he has been mistaken, and not that a party or pleader has knowingly made a false statement in the pleading amended.

7. Papers not a part of the record in a cause should not be exhibited to the jury and commented upon by counsel in his argument before the jury.

8. Counsel has no right to introduce arguments that are not supported by the evidence produced on the trial.

9. It is not proper to attack the credibility of a party to a suit, who testifies on his own behalf, unless such comment is based on facts appearing in the evidence, or unless it can be deduced from the witness' appearance and conduct while giving his testimony.

A Writ of Error to the Circuit Court for Orange County; C. O. Andrews, Judge.

Judgment reversed.

*Jones & Jones,* for Plaintiff in Error;

No appearance for Defendant in Error.

BROWNE, C. J.—J. W. Sims sued G. O. Watkins individually on a promissory note executed by Watkins and W. W. Herndon for $700.00.

The note was one of three given by Watkins and Herndon to J. W. Sims for part of the capital stock of the South Apopka Nursery Company bought by Watkins and Herndon; the other two notes were paid.

There were four amended pleas alleging, payment, counter-claim, set-off and recoupment, resulting from the purchase by J. W. Sims from Watkins of all the lime tree buds in the nursery to the value of $747.00.

It appears from the record that there had been a previous trial of this cause, and the verdict set aside and a new trial granted, after which the defendant filed the four amended pleas, and an additional plea setting out that after the plaintiff Sims sold the "nursery stock, stakes, goods and chattels" for which the note sued on was part payment, that Sims removed from the premises 5,000 stakes used in the nursery business, which were worth five cents a piece, and that the defendant was entitled to have the sum of $250.00, in addition to the claim set out in the former pleas, credited on the note. Interest was claimed on amounts due from both transactions from date of filing pleas.

The first assignment of error was based upon the court sustaining the objection by the plaintiff to a question to the defendant as to what business existed between him and Herndon. We fail to see the pertinency of this question, but if it had any, the error was subsequently cured by the defendant testifying to their previously existing business engagements.

The second assignment is based upon the court sustaining an objection to this question propounded to the defendant: "Has this note ever been paid?" After sustaining the objection, the court said: "I will permit that question to be answered this way: 'Do you claim to have paid the note?'" which the witness answered in the affirmative, and he was then told to "explain to the jury how it was paid." These questions which the court permitted

to be asked and answered, brought out all that could have been adduced by the questions propounded by counsel for plaintiff, and we cannot see how the defendant was harmed by the refusal to permit the question to be asked in a slightly different form.

The third assignment is: "The court erred in stopping the defendant when testifying, then and there saying to the witness, 'Don't tell what some one else said; that is merely hearsay.' "

This assignment relates to this transaction: the defendant when testifying in his own behalf said: "Walter Sims was down there at that time—came drinking and my foreman was drinking too with him, and a dispute came up about the lime buds. Walter Sims (the plaintiff) had previously bought a few lime buds at 50 cents apiece and he wanted all the lime buds, and in his drunken way claimed he was going to have them. Mr. Herndon told him he should not have them. The court: Don't tell anything hearsay. Witness: Well they got in a dispute. Walter Sims gets in his car and goes after his father and brought him down to settle possession of the lime buds and his father and I went into the house and talked it over and he said: 'I have had those buds budded at right smart expense.' The court: Don't tell what somebody else said; that is merely hearsay and is not proper testimony unless he is a party to the suit. Tell what was done, but not the conversation."

The witness was not allowed to testify to what agreement was entered into between himself and the plaintiff's father, except that when they came out, B. M. Sims said to his son, "Well, we bought the lime buds at 20 cents apiece."

We think the circumstances surrounding this transaction show that J. W. Sims brought his father to the scene of the dispute as his representative to negotiate with Watkins about the sale of the lime buds, and that Watkins should have been permitted to testify to all that occurred between them, that led up to and explained the statement to his son, "Well, we bought the lime buds at 20 cents apiece."

The testimony of the plaintiff with regard to this transaction is corroborated by that of the witness Isaac John Cason, as follows: "I remember that Mr. Walter Sims came over to the nursery and what occurred there in regard to the purchase of lime buds. Mr. Sims came down to the nursery and he and Mr. Herndon were talking over the buds. It seems Mr. Sims wanted the lime buds. They had discussed over it, and Mr. Herndon would not let Mr. Sims have the buds and Mr. Sims was somewhat intoxicated and they had high words over it, and Mr. Sims left the premises and returned with his father, Captain B. M. Sims. Mr. B. M. Sims and Mr. Watkins, Mr. G. O. Watkins, went into the camp house and had a talk concerning these buds; they talked for awhile and after awhile they came out and Mr. B. M. Sims announced that he had bought the entire lime buds at 20 cents apiece. Who did he say that to?' He was talking to his son Walter."

The rule applicable to the question under consideration is thus stated in 21 R. C. L. 820: "Whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory; and it is the province of the jury to pass upon it. Direct evidence is not indispensable—indeed, frequently is not available—but instead circumstances may be relied on, such as the

relation of the parties to each other and their conduct with reference to the subject matter of the contract. And, notwithstanding the alleged principal and agent are the only witnesses called, and they both categorically deny the existence of the relation, the jury have the right to weigh and consider the whole of the evidence and the fair and reasonable inferences that might be drawn therefrom, and they may be entirely justified in disregarding the 'yes or no' answers and in reaching the conclusion that . the evidence as a whole is sufficient to prove the relation of agency to exist.   *   *   * · It is within the province of the court to determine whether under an ascertained state of facts an agency did' exist; but it is the better prac-tice to submit the question to the triers of fact."

Here was a dispute between the plaintiff and defend-ant's foreman in the presence of the defendant, about the purchase of the lime buds. The plaintiff was more or less intoxicated, and actuated probably by a feeling that per-haps in his condition he might not be able to make a satis-factory trade himself, went away and brought back his father, whom it appears from the testimony had bought some lime buds from the defendant at 20 cents apiece. The father and the defendant then went into the house together and after being in there some time they came out and the father announced: "Well, we have bought the lime buds at 20 cents apiece."

We think that all the conversation that occurred be-tween B. M. Sims and the defendant should have gone to the jury, so that they could have weighed and considered the whole of the evidence, and the fair and reasonable inference that might be drawn therefrom, so as to reach a conclusion as to whether the evidence as a whole was

sufficient to prove that the relation of agency existed between J. W. Sims and B. M. Sims, his father.

The testimony of Cason corroborates that of the defendant Watkins, and shows a ratification by the plaintiff of the agreement that Watkins says was entered into between him and B. M. Sims, when acting on behalf of his son, J. W. Sims.

The fourth, sixth, seventh, eighth and ninth assignments of error relate to rulings sustaining objections to a line of questions propounded to the defendant Watkins, and to the witness Arthur Landstreet, about the various items of property belonging to the South Apopka Nursery Company which became the property of Watkins when he purchased the capital stock of that company.

It appears that the South Apopka Nursery Company was a corporation, the stock of which was held by the Wilson Toomer Fertilizer Company, J. W. Sims and Dr. Sims. Watkins and Herndon bought all the capital stock through one Arthur Frank Landstreet. There was no memorandum in writing containing a list of the various items of property and chattels belonging to the South Apopka Company. It seems, however, that the land on which the nurseries were situated was owned by J. W. Sims, and when Herndon and Watkins bought the stock of the company, a short lease was executed whereby Sims let Herndon and Watkins have the use of the land for a term of two years without charge, with the privilege of renting the premises at the expiration of the two years. The agreement also provided that Herndon and Watkins should have all packing materials on the premises of the South Apopka Nursery, and the use of three small houses on the premises for the term of the lease.

Arthur Landstreet testified that he was the "mediator of the sale, representing Wilson Toomer Fertilizer Company, who owned the majority of the stock and were anxious to get rid of their portion." He testified that he "lent what influence he could towards closing the sale and handling the details of the sale."

We think it was competent for Landstreet, who "negotiated the sale," to testify to what personal property passed to Watkins and Herndon, upon their becoming the owners of the capital stock of the South Apopka Nursery Company, and the court erred in sustaining objections to questions seeking to elicit this information.

The assignments relating to the charge of the court, and rulings of the court on charges requested by the defendant do not show reversible error. We will discuss, however, the twenty-third assignment, which is predicated upon the refusal of the court to give this charge, requested by the defendant: "If you find that the note sued upon has been paid by the defendant by the sale of certain lime buds to the plaintiff, and that the defendant was entitled to credit for same upon the note in payment thereof before suit, then it will not be proper or legal to assess attorney fees upon the said note against the defendant."

Daniel on Negotiable Instruments, Sec. 1221, thus states the law: "Payment of a debt is not necessarily a payment of money; but that is payment which the parties contract shall be accepted as payment." Had there been evidence tending to show an agreement between Watkins and J. W. Sims, that the lime buds which it is claimed were bought by Sims from Watkins were to be accepted as part payment on the note, the charge requested would have been proper, and its refusal to give

24—Vol. 81

it error, but as the court eliminated the testimony in relation to the agreement between Dr. Sims and Watkins, there was no testimony upon which the instruction could be based.

As we have held that the testimony with regard to the conversation between Dr. Sims and Watkins should have gone to the jury, it follows that this instruction should if requested be given to the jury on a subsequent trial of this cause.

The twenty-ninth, thirtieth, thirty-first and thirty-second assignments of error relate to overruling an objection by the defendant to improper statements by counsel for plaintiff in his closing argument, and permitting counsel to continue to present such improper matters to the jury.

The bill of exceptions contains this recital: "The said parties having concluded and submitted their evidence then and there came on the arguments of counsel to the jury and the counsel for plaintiff then and there in his closing argument to the jury informed the jury that the cause had been previously tried in this court and argued to the jury and then and there testified to the jury that there were discrepancies between the former plea of the defendant and the present pleas of the defendant, the former pleas and pleading not being before the jury and not having been read to the jury and the said counsel then and there held up in the presence of the jury the former pleas and commented and said to the jury in his argument, 'it was very strange that in the former pleas cnly enough lime buds were claimed as would cover the note sued on by the plaintiff, while in the present pleas enough had been put in as would also cover the interest

on the note,' and 'gentlemen of the jury, you must remember that the defendant Watkins swore to those former pleas, and he is swearing to these present pleas and there is something very strange about that,' to which matters and to which argument by counsel, the defendant, by his counsel, then and there objected, that counsel for plaintiff was making an attack on the credibility of the defendant at a time and in a manner which left him unable to reply; that the former pleas were not the issues in the case; that they had not been read to the jury or used in the case and was testimony given by counsel for the plaintiff and not legitimate comment upon the evidence; that it was improper use of papers as evidence; that the matters testified to by counsel were not before the court and that it was an effort to impeach and discredit the defendant. But the court did then and there overrule the objection of defendant and permitted counsel to proceed."

We think the statements of counsel complained of in these assignments of error as set out in the bill of exceptions, were improper.

The transcript of record recites that defendant filed pleas on the 4th of June, 1917, and the case was tried on December 14, 1918, resulting in a verdict for the defendant, which was set aside and a new trial granted on the 16th of December, 1918. By leave of court obtained November 8, 1919, four amended pleas and one additional plea were filed. The original pleas do not appear in the transcript, and the case was tried on the issues made by the amended and additional pleas filed by leave of court.

An amended pleading which is complete in itself, and does not refer to or adopt a former pleading as a part of it, supersedes the former pleading which ceases to be

a part of the record.  Baker v. Louisville & N. Terminal R. Co., 106 Tenn. 490, 61 S. W. Rep. 1029, 53 L. R. A. 474; Waters-Pierce Oil Co. v. Bridwell, 103 Ark. 345, 147 S. W. Rep. 64, 32 Ann. Cas. 837; Elizabethport Mfg. Co. v. Campbell, 13 Abb. Pr. (N. Y.) 86; First State Bank of Mountain Lake v. C. E. Stevens Land Co., 119 Minn. 209, 137 N. W. Rep. 1101, 43 L. R. A. (N. S.) 1040; Condon National Bank v. Rogers, 60 Ore. 189, 118 Pac. Rep. 846, Ann. Cas. 1914-A 101; 21 R. C. L. 587; 31 Cyc. 465.

In First State Bank of Mountain Lake v. C. E. Stevens Land Co., *supra*, the court said: "The service of an amended pleading takes the place of a former pleading, and stops all further use thereof."

The rule stated in 31 Cyc. 464, is "The *prima facie* effect of the amendment of a pleading is an acknowledgment by the pleader that he has been mistaken, and not that a party or pleader has knowingly made a false statement in the pleading amended." Elizabethport Mfg. Co. v. Campbell, *supra*.

The original pleas being superseded by the amended and additional pleas, it was improper for counsel to exhibit the former pleas to the jury and comment on them for the purpose of discrediting the witness.  Timely objection to the conduct of counsel for plaintiff made by the defendant, was overruled, and the court permitted counsel to proceed.  Counsel's statements constituted an attack upon the credibility of the witness, by matters which did not appear in the testimony.  The former pleadings had ceased to be a part of the record, and counsel had no right to exhibit them to the jury for their consideration for any purpose.  Papers not a part of the record in a cause, cannot be exhibited to the jury in this manner, and such use, as well as the comment on them was improper.

"Counsel has no right to introduce arguments that are not supported by the evidence produced on the trial. The rights of parties are to be determined from the evidence. If he can be permitted to make assertions of facts, or insinuations of the existence of facts, not supported by the proof, there is danger that the jury will lose sight of the issue or be influenced by misstatements to the prejudice of the other party." 2 R. C. L. 416.

It is not proper to attack the credibility of a party to a suit, who testifies in his own behalf, unless such comment is based on facts appearing in the evidence, or unless it can be deduced from the witness' appearance and conduct while giving his testimony.

For the errors indicated herein, the judgment is reversed and a new trial granted.

TAYLOR, WHITFIELD, ELLIS AND WEST, J. J., concur.