NEAL JOHNSON, *Plaintiff in Error,* v. THE STATE OF FLOR-
IDA, *Defendant in Error.*

Division A.

Opinion Filed December 16, 1924.

Considerable latitude is allowed counsel in addressing the jury
in so far as their remarks consist of logical deductions from
the evidence and the fanciful play of their imagination, but
statements of fact made outside the evidence which are
likely to produce injury are not permissible, and the trial
judge should nullify the effect of such remarks or state-
ments by proper instructions.

A Writ of Error to the Circuit Court for Madison
County; DeWitt T. Gray, Judge.

Judgment reversed.

*E. Dixie Beggs,* for Plaintiff in Error.

*Rivers Buford,* Attorney General, and *Marvin C. McIn-
tosh,* Assistant Attorney General, for the State.

ELLIS, J.—Neal Johnson and John Cherry were indicted
for the murder on July 26th, 1923, of Mary Pierson, in
Madison County. Johnson as principal in the first degree,
and Cherry as being present, aiding, abetting and procur-
ing the felony to be committed. A severance was granted
upon the motion of the State Attorney and Johnson was
placed upon trial in April, 1924. There was a verdict of
guilty of murder in the first degree with recommendation
to mercy.

Mary Pierson, a negro woman about forty years old, the
wife of Oliver Pierson, was found dead near her house.
When the body was found it had a bullet hole through the

head, a small tree near which it was lying had been struck by bullets, one or two were removed; they were from a 38 calibre cartridge. The wound in the woman's head which caused her death was produced by a bullet from a cartridge of that calibre.

The evidence against the defendant consisted of the circumstance of his having been in the neighborhood of the home of the deceased the day she was supposed to have been killed; the testimony of two or three negro women, two of whom were sisters of the deceased, who testified to conditional threats made by the defendant against the deceased about a month and six months before her death, and the testimony of a negro preacher named Wilson who was an itinerant vendor of toilet articles and the illicit lover of Mary. When the body of the deceased was found there was near it a string, a pencil and a box of salve. The pencil was the property of the "preacher." He was the last person with her. He and Mary according to his testimony had gone into the woods near the path where they were having sexual intercourse, when the defendant appeared and shot at them. The "preacher" dodged behind a small tree, secured his traveling bag or "grip" which was open, and ran away. He did not report the shooting, but heard the next morning that Mary had been found dead. Her body was found Friday morning. She and the "preacher" were together about two o'clock in the afternoon on the day before, about which time according to the witness Wilson the shooting occurred. There was some evidence that about two months after Mary was killed, the "preacher" said he had not been "up this way" since; that when he was on his last trip he got into some trouble; that when he and Mary were together "down in the woods" some one "rustled the bushes" and commenced shooting; that he did not know who it was, but if "Mary is dead I

am going to tell that Neal Johnson did it.'' No pistol of 38 calibre was found in possession of the defendant, but one was found in his house of 32 calibre. John Cherry, the person jointly indicted with the defendant for the murder, said he saw one of the 38 calibre in the ''preacher's'' suit case ''immediately'' before the shooting. He said that Lizzie McCray also saw it; that they were at Mary's house. Lizzie, a sister of Mary, denied seeing the pistol.

With the exception of the testimony of the witness ''Wilson,'' called the ''preacher,'' the evidence against the defendant consists of something less than suspicious circumstances. His presence in the neighborhood on the day of the homicide could barely be said to be suspicious, because he was living in that locality. It is shown that he had visited Mary often, and had been doing so for many years. There was some evidence of jealousy because of the ''preacher's'' attentions to Mary which was expressed in a threat against Mary and the ''preacher'' made some months before the homicide.

There are several assignments of error, some of them are abandoned and some are without merit. The thirty-sixth assignment of error rests upon the court's order refusing defendant's motion to instruct the jury to disregard certain statements made by the State's Attorney in addressing the jury on behalf of the State. In referring to the defendant the State Attorney said: ''Neal Johnson went out there for what cats and dogs fight for;'' again, ''Neal Johnson is a brute.''

Considerable latitude is allowed counsel in addressing the jury in so far as their remarks consist of logical deductions from the evidence and the fanciful play of their imagination, but when statements are made by counsel outside the evidence which are likely to do the accused an injury, it

will be deemed an abuse of discretion in the judge if upon proper objections he refuses to interfere and as far as possible nullify the effect of such remarks by proper instructions to the jury. See Jenkins v. State, 35 Fla. 737, 18 South. Rep. 182; Killins v. State, 28 Fla. 313, 9 South. Rep. 711; Newton v. State, 21 Fla. 53; Clinton v. State, 53 Fla. 98, 43 South. Rep. 312; Bradham v. State, 41 Fla. 541, 26 South. Rep. 730; Wright v. State, 79 Fla. 831, 84 South. Rep. 919; Washington v. State, 86 Fla. 533, 98 South. Rep. 605.

It is a delicate matter to undertake to restrict the argument of counsel to deductions logically drawn from the evidence, or to restrict his illustrations that may be drawn from a wide knowledge of history and great learning or to confine his powers of imagination within the narrow limits of the facts supported by competent evidence upon the trial, but there are undoubtedly some limitations to his freedom of speech. It is undoubtedly improper in the prosecution of persons charged with crime for the representative of the State to apply offensive epithets to defendants or their witnesses and engage in vituperative characterizations of them. In this connection we commend the language of Mr. Justice TERRELL in the case of Washington v. State, *supra*. Denouncing the defendant as a ''brute'' and asserting that he went ''out there for what cats and dogs fight for,'' alluding either to the home of the deceased or the place where she was killed, was scarcely within the limitation of counsel's privilege in the matter of debate, and when used by an officer of the ability and generally known competency and influence of the learned counsel for the State, cannot be said to be without prejudicial effect upon the defendant against whom the evidence was not compellingly conclusive, to say the least.

In view of the entire record and careful consideration of

the evidence as exhibited by the bill of exceptions, we think the justness of the case requires that the judgment should be reversed and a new trial awarded.

It is so ordered.

TAYLOR, C. J., AND BROWNE, J., concur.

WHITFIELD, P. J., AND WEST AND TERRELL, J. J., concur in the opinion.