ELEANOR B. ALFORD v. THE BARNETT NATIONAL BANK OF JACKSONVILLE

188 So. 322
Division B.
Opinion Filed April 11, 1939
Rehearing Denied May 5, 1939

*Thomas B. Adams, R. R. Axtel* and *Gregory Smith,* for Plaintff in Error;

*Fleming, Hamilton & Diver* and *F. P. Fleming* for Defendant in Error.

PER CURIAM.—This case is here for review on writ of error to a judgment in behalf of the defendant below entered by the Circuit Court of Duval County, Florida. The cause was submitted to a jury on the first count of the revised declaration, viz.:

"For that said defendant, the Barnett National Bank of Jacksonville, on to-wit, April 15, 1929, converted to its own use or wrongfully deprived the said plaintff of the use and possession of the plaintiff's goods, that is to say one non-negotiable promissory note in words and figures following, to-wit:

"MORTGAGE NOTE

" 'No. 4

" '$25,000.00    Jacksonville, Florida, April 14th, 1925,

" 'On or before Four (4) years after date, for value received, I promise to pay to CHARLES A. BROWN, JR. Twenty-five Thousand and no/100 Dollars, together with interest thereon at the rate of six per centum per annum from date until paid, said interest being payable quarter annually, according to the tenor of sixteen interest coupon notes of Three Hundred Seventy-five and no/100 Dollars each attached hereto and bearing even date herewith, both principal and interest payable in United States Gold Coin of the present standard of weight and fineness or its equivalent, together with current rate of exchange on the City of New York, at the Barnett National Bank of Jacksonville, Florida.

" 'This note and interest secured by mortgage on real estate of even date herewith.

" 'AVONDALE COMPANY (CORPORATE SEAL)

"Indorsed:     " 'By (SIGNED) RAYMOND D. KNIGHT

" 'Charles A. Brown, Jr.,'          Its President

" 'Attest (SIGNED) J. P. LEMASTER,

Its Secretary.'

"That said note was then and there of great value, to-wit, of the value of Twenty-five Thousand ($25,000.00) Dollars.

"Wherefore Plaintiff sues and claims $50,000.00 damages."

Pleas to the count, *supra,* were: (a) first plea, not guilty; (b) third plea denied that the note, on April 15, 1929, was plaintiff's good; (c) fourth plea, on April 15, 1929, plaintiff was not entitled to the use of the note; (d) fifth plea, on April 15, 1929, the plaintiff was not entitled to the possession of the note; (e) the sixth plea, on April 15, 1929, plaintiff was not entitled to the use and possession of the note; (f) the sixty-second plea averred that Charles A. Brown, Jr., the payee in the Avondale note, delivered the same to the defendant on the 28th day of February, 1929, with the plaintiff's leave and license; (g) the sixty-fourth plea was to the effect that the plaintiff voluntarily delivered the Avondale Company note to the Secretary of Charles A. Brown, Jr., with the plaintiff's knowledge and consent, and that Charles A. Brown, Jr., payee of the Avondale Company note, with the consent and approval of the plaintiff, on the 28th day of February, 1929, delivered the note to the defendant, who is the holder in due course for value. The defendant, at the time of obtaining the note, had no advice or suggestion of any right, title or interest of the plaintiff in and to the Avondale note, nor did the defendant have the

means of knowing that the plaintiff claimed any right, title or interest in the note. The jury heard all the evidence, argument of counsel and charge of the Court and then rendered a verdict for the defendant below, which is defendant in error in this Court.

## STATEMENT OF FACTS

The facts are substantially, viz.: Mrs. Eleanor B. Alford, in the early part of 1928, owned stock in the Gair Corporation, the par value of each share of stock being $100.00, and she had an opportunity of receiving stock in a new corporation in the process of reorganization which was to take over the Gair Corporation, or in lieu thereof receive $93.50 cash per share of stock. She had or owned 180 shares. Mrs. Alford was the widow of a Presbyterian minister, and Mr. Brown, a real estate dealer, an elder in the same Church. Mrs. Alford, in April, 1928, consulted Mr. Brown about the investment of her money. Mr. Brown pointed out that he was in a position to advantageously use her money and then agreed to assume one-half of the loss of the sale of her stock in the Gair Corporation if she would accept the cash offered by the Gair Corporation and provided that Mrs. Alford would let him have the money, and he would pay her 8% per annum quarterly, which she accepted, and when Mr. Brown delivered to her his note in the sum of $17,600.00 dated the 27th day of April, 1928, he likewise secured the payment to Mrs. Alford by the delivery to her of a nonnegotiable note issued by the Avondale Company payable to him in the sum of $25,000.00. The payment of the full face of the Avondale Company note was contingent upon the quieting of the title to lands which Mr. Brown had sold the Avondale Company, and the nonnegotiable note represented the purchase price thereof. It had been suggested that the note would be paid by the Avon-

dale Company in July, 1928, and Mrs. Alford was planning a vacation trip North and it was suggested that Mrs. Alford, in her absence, leave the note with Mrs. Wood, secretary to Mr. Brown, so the delivery thereof could be made to the Avondale Company for payment, if payment was desired.

The Avondale note, on July 18, 1928, was by Mrs. Alford delivered to Mrs. Wood, secretary of Mr. Brown, to be kept by her in a lock box so as to be available for payment in the event payment was desired, and if made, 600 shares of Walkill Corporation stock would be substituted as security for the Brown note then held by Mrs. Alford. The note was not paid during Mrs. Alford's absence, but remained in the lock box kept by Mrs. Wood. Mr. Brown made quarterly payments of interest on his note held by Mrs. Alford until May or June, 1931. He then explained to her that because of financial difficulties it was impossible for him to continue interest payments on his note, and upon receiving this information Mrs. Alford immediately consulted an attorney for advice as to her legal rights, and she immediately requested of Mrs. Wood the return of the Avondale Company to her.

It was testified to by Mr. Brown, according to the record, that prior to February, 1929, he had a conference with Mrs. Alford and pointed out to her that it was necessary for him to raise some money and requested that she permit a return to him of the Avondale Company note held by her as security with her in lieu of the Avondale note 600 shares of Walkill Farms Corporation as security for the $17,600 note of Mr. Brown then held by Mrs. Alford. It was made to appear that Mr. Brown represented to his secretary, Mrs. Wood, custodian of the Avondale note in behalf of Mrs. Alford, that he had obtained Mrs. Alford's consent and approval to a substitution of the security, when Mrs. Wood then and there delivered the Avondale Company note to Mr. Brown.

While the testimony of Mr. Brown was positive as to obtaining the consent and approval of Mrs. Alford for the substitution of the security, Mrs. Alford was equally positive, as shown by her testimony in the record, that she did not agree or consent to a substitution of the Avondale Company note then with Mrs. Wood for safe keeping in her behalf, and did not authorize Mr. Brown or Mrs. Wood to take the Avondale Company note and deliver it to Mr. Brown and substitute therefor 600 shares of stock in the Walkill Farms Corporation.

It is shown that the Walkill Farms Corporation owned 12,000 acres of land situated in Clay County, Florida. The land was bought in 1925 for $300,000.00; the sum of $150,000.00 was paid in cash and a purchase price mortgage given on the land for the remaining $150,000.00. The Walkill Farms Corporation was organized and a conveyance was made to it subject to the purchase price mortgage. It was shown at the time the stock was given to Mrs. Alford as security for the payment of her note on the part of Charles A. Brown, Jr., the purchase price mortgage, or a part thereof, on the Clay County lands was due, and the taxes thereon unpaid. It is not disputed that the indebtedness due on the Clay county lands exceeded its market value and as a result the stock of the Walkill Farms Corporation was worthless and this fact was known to Brown in July, 1928, when Mrs. Alford was leaving Jacksonville on her vacation, but this fact was carefully guarded by Brown and Mrs. Wood so that Mrs. Alford did not acquire the information, and these facts and other incidents in connection with obtaining the surrender of the Avondale Company note if believed by the jury would in law amount to fraud on Mrs. Alford.

During the month of February, 1929, Charles A. Brown, Jr., obtained a loan from the defendant Barnett National Bank in the sum of $11,000.00 and secured the payment

thereof with the Avondale Company note, and he then and there endorsed upon the Avondale Company note the name of Charles A. Brown, Jr., and delivered the same to the Barnett National Bank as security for the payment of his $11,000 note.

This suit is brought upon the theory that the Barnett National Bank, in holding the non-negotiable note of the Avondale Company as collateral security for the Charles A. Brown, Jr., loan and in receiving payment on the note converted the same to its own use and was superinduced by fraud practiced upon Mrs. Alford by Charles A. Brown, Jr., and title to the Avondale Company note was not transferred to the Barnett National Bank.

It is agreed upon by counsel for the respective parties to this suit, and it appears to be the settled law of Florida, that a pledgee with a right of possession may sue in an action of trover for the conversion of property, and a pledgee of a non-negotiable note has a lien upon the note, like the note here sued for, and may maintain an action of trover for the coversion of that interest. See Robinson v. Hartride, 13 Fla. 501; Wright v. Skinner, 34 Fla. 453, 16 So. 335; Dekle v. Calhoun, 60 Fla. 53, 53 So. 14; Quitman Naval Stores Co. v. Conway, 63 Fla. 253, 58 So. 840; Louisville & N. R. Co. v. Citizens' & People's Bank, 74 Fla. 385, 77 So. 104, L. R. A. 1918C 610;West Yellow Pine Co. v. Stephens, 80 Fla. 298, 86 So. 241; Fletcher v. Dees, 101 Fla. 402, 134 So. 234; Shaw v. Little Rock & Ft. Smith R. Co., 100 U. S. 605, 25 L. Ed. 757; Easton v. Hodges, 18 Fed. 677; Duggan v. Wright, 157 Mass. 228, 32 N. E. 159; Bank of Rochester v. Jones, 4 N. Y., (4 Coms.) 497; 55 Am. Dec. 290; Blackman v. Lehman, 63 Ala. 547, 35 Am. Rep. 57; 49 C. J. 956, 957, Secs. 128 and 132.

When the witness Stockton was testifying, counsel for

plaintiff interposed objections to certain questions, which were overruled by the trial court and assigned as error.

The questions are, viz.:

1. "Please tell the court and jury, Mr. Stockton, whether, at any time prior to the maturity date on the 14th day of April, 1929, the Avondale Company ever had any notice from Mrs. Alford, or ever had any knowledge that Mrs. Alford, the plaintiff in this case, claimed an interest in the Avondale note which matured on the 14th day of April, 1929?"

2. "Did Mrs. Alford ever assert prior to—did Mrs. Alford ever assert between April, 1928, and the maturity date of this note for $25,000 on the 14th day of April, 1929, any claim to the quarterly interest due under the note according to its terms?"

3. "Now I here invite your attention again to plaintiff's Exhibit No. 1, which is the note of the Avondale Company maturing on the 14th day of April, 1929, and ask that you state, please, whether or not shortly prior to the 28th day of February, 1929, you had a conversation, on behalf of the Avondale Company, had a conversation with Mr. McQuaid relative to that note?"

While the witness, Mrs. Alford, was testifying the trial Court overruled objections of plaintiff and permitted or allowed her to answer the following questions on cross examination, viz.:

1. "Have you ever made any demand upon the Avondale Company for the payment of this $25,000 note, or ever suggested to the Avondale Company that you claimed any interest in this note?"

2. "Now, this note dated the 27th day of April, 1928, and payable a year after date to you from Mr. Brown, matured on the 27th of April, 1929, and the note says, 'If

not paid at maturity, this note may be placed in the hands of an attorney at law for collection; in that event it is agreed and promised by the makers and endorsers severally to pay additional costs and attorneys' fees, to which the payee may be put for the collection thereof.' Did you make demand upon Mr. Brown for the payment of this $17,600, note on the date of maturity, that is, on the 27th of April, 1929?"

3. "During that period after the note had matured, on the 27th day of April, 1929, up to the early part of 1931, you had never made any demand on Mr. Brown for the payment to you of the principal to you of this note?"

4. "You have testified, I believe, respecting the Avondale Company note which you testified you held as collateral that you knew that note matured on the 14th of April, 1929. When was it you first attempted to collect the amount of that note?"

5. "And then during all of that time, from the 18th of July, 1928, until May of 1931, you had had no more concern for this Avondale Company note than to allow it to remain in the hands of Mrs. Wood under the terms of this receipt which you received in July, 1928, and which provided, and which you have alleged, was to return the note back to you when you got back from your vacation?"

6. "I ask you again, Mrs. Alford, did you regard that he had committed a fraud upon you in violating any criminal statute of the State of Florida as your declaration charges?"

7. "Well, did you think he had committed a fraud in violation of the Florida Statute against obtaining money by false pretense, or obtaining anything of value by false pretenses, as you have charged in your declaration in 1934?"

8. "Did you take out a warrant for his arrest and prosecution at that time, Mrs. Alford?"

9. "Mrs. Alford, it is a fact, is it not, that on the 10th day of July, 1931, when you instituted this suit against the

bank, you bought this suit also against Mr. Charles A. Brown, Jr., to recover for conversion of this same Avondale Company note, is it not?"

10. "Do you know, as a matter of fact, that a few days after you brought the suit against this defendant, the Barnett National Bank, on the 10th day of July, 1931, that is on the 17th of July, 1931, you instituted a suit for conversion of the Avondale Company note, also against Mrs. Lilly H. Wood?"

11. "Did you instruct Mr. Smith at that time to institute any criminal proceedings against Mr. Brown, or take out a warrant against him for obtaining money or property by false pretenses?"

Counsel for plaintiff in error contends that the answers to each of the questions assigned as error are prejudical to the plaintiff and constitutes no defense to plaintiff's cause of action. The following authorities are cited: Louisville & N. R. Co. v. Citizens' & People's Bank, 74 Fla. 385, 77 So. 104, L. R. A. 1918C 610; First Nat'l. Bank of Montgomery v. Montgomery Cotton Mfg. Co., 211 Ala. 551, 101 So. 186; Dixie Guano Co. v. Wessel, 296 Fed. 433, 35 A. L. R. 322; Dale v. Jennings, 90 Fla. 234, 107 So. 175; Quinn v. Phipps, 93 Fla. 805, 113 So. 419, 54 A. L. R. 1173; 49 C. J. page 933.

It is shown that Mrs. Alford knew the Avondale Company note matured on April 14, 1929, and that Mr. Brown's note to her matured on April 27, 1929 and that Brown paid quarterly payments of interest on his note to her until May or June, 1931. One of the issues tendered was whether or not Mrs. Alford had released her interest in the Avondale note and Mr. Stockton, who was an officer of that company, was in a position to say what interest, if any, Mrs. Alford asserted in the note. Mr. Brown claimed that she had consented to a substitution of 600 shares of the Walkill Farms Corporation stock for the Avondale Company note, and the

fact that she had not manifested any interest in the note threw information on the question of whether or not she had released her claim to it, as stated by Brown, and that she looked to a substituted security for payment. The trial court had in mind, no doubt, the issues tendered by the first count, *supra*, and pleas thereto, and felt or believed the same pertinent and relevant thereto and in so doing exercised a broad discretion, and in considering the issues, permitted or allowed the questions and answers assigned as error, we cannot say that the trial court committed error in admitting into evidence for the consideration of the jury the facts elicited. See Johnson v. Reynolds, 97 Fla. 591, 121 So. 793; Williams v. Bailey, 69 Fla. 225, 67 So. 877.

We have considered the assignments based on the ruling of the trial court when it instructed the jury to disregard the answer of the witness Smith as to the pleadings of the cause previously ruled upon by Judge Gibbs in a former step of the case. While it is fundamental that trial courts must be given wide latitude and discretion in conducting the trial of cases, we fail to find merit in the contention made.

The objections made by counsel for plaintiff in error to certain questions propounded by counsel for defendant on direct examination to the defendant's witness, Charles A. Brown, Jr., and the objections to certain questions propounded by counsel for defendant on direct examination to the defendant's witness, Charles A. Brown, Jr., and the objections to certain questions propounded to the witness Brown by counsel for defendant on cross examination, have been made the basis of assignments numbered 24 to 43, inclusive. We think each of these assignments are controlled by the discretion of the trial court. While technical or harmless error may have developed, we do not think or believe the same to be of such a serious consequence as to re-

quire a reversal of the judgment.    See Johnson v. Reynolds and William v. Bailey, *supra*.

The record shows that during the progress of the trial and while the defendant was offering evidence to sustain the issues made, the defendant offered the testimony of Myron L. Howard, J. H. Higbee, Charles J. Williams, Jr., Martin G. Roess, B. K. Hall, R. R. Rosborough, F. C. Groover, James D. Baker, and A. W. Ingliss.    Each of the witnesses testified that they had known the witness Charles A. Brown, Jr., who had resided in Jacksonville for many years past and were each acquainted with his reputation for truth and veracity in the City of Jacksonville and that his reputation was good and from that reputation known by each witness they would believe the witness (Brown) under oath. Counsel for the plaintiff seasonably objected to this evidence on the grounds, viz.:

"(1)    That no attack was made or no attack has been made by the plaintiff upon the character of the witness.

"(2)    Because mere contradictory statements or variances between his evidence and the evidence of other witnesses is not sufficient to warrant or permit the defendant in bringing forward supporting witnesses, that is, witnesses for the purpose of supporting the character of  the  witness Brown for truth and veracity.

"(3)    The charge of criminal conduct on the part of the witness Brown is not before the Court at this time, the 3rd and 5th counts of the declaration in which those charges were made having been withdrawn from the consideration of the jury.

"(4)    That the defendant, by its conduct of the trial of this case, has contended that the character of the witness Brown is not in issue, and is now estopped to raise that question."

"THE COURT: Gentlemen, I will state with reference to these objections, what I conceive to be the meaning of the Supreme Court in the case of Mercer versus the State, 40 Fla. page 232, the text, and under that decision I overrule the objection."

Counsel for defendant contend that the following proceeding occurring in the presence of the jury during the progress of the trial, placed the testimony clearly within the rule of law enunciated in State v. Mercer, *supra,* and that counts 3 and 5 of plaintiff's revised declaration read to the jury, but subsequently withdrawn, charged the witness Brown with fraudulent acts and misrepresentations in his dealings with the plaintiff which violated the criminal laws of Florida. The material portion of count 3 is, viz.:

"(b) That afterwards, on to-wit, the 28th day of February, A. D. 1929, the said Charles A. Brown, Jr., without the knowledge, approval or consent of the plaintiff, and in violation of said receipt, Exhibit 'd,' and in violation of said letter, exhibit 'E' and designedly by a false pretense, and with an intent to defraud the plaintiff, contrary to Sec. 7258, Compiled General Laws of Florida, did fraudulently request and obtain the possession of said Avondale Company note from the said Wood, and in that behalf the said Brown falsely and fraudulently represented to the said Wood that he had the plaintiff's authority to use said Avondale Company note, and that it was entirely agreeable with the plaintiff for the said Wood to deliver the same to the said Brown; and the said Wood, believing and relying upon the representations so made by the said Brown to be true and being deceived thereby delivered the said Avondale Company note to said Brown."

Counsel for plaintiff, in the presence of the jury, said:

"My opinion is we would be entitled to prove criminal

acts on Mr. Brown's part in either of those declarations, one against him and one against the Bank."

One of the witneses testified for plaintiff and said:

"When this matter was brought to my attention and I made investigation, I considered very seriously the possibility of bringing or causing a criminal prosecution to be instituted. My recollection is that I talked to Mrs. Alford concerning it. And the reason why no criminal proceeding was commenced, was that the Act of Mr. Brown had been committed in February, 1929. It was then May or June of 1931. The criminal statute of limitations outlawing such prosecutions had already run by the time that the matter was placed in my hands and it was not possible to prosecute Mr. Brown."

The witness Brown testified that he went to plaintiff's home and place of business and obtained her consent and approval for the substitution of security, and upon cross examination the witness was interrogated on the theory that he made false statements about seeing her. The questions are, viz.:

"If you saw her at all (referring to February, 1929), can you recall whether it was morning or afternoon.?"

"Well, if you saw her, can you recall what she was doing at the time?"

"Well, if you saw her and talked with her, can you tell us what room it was in?"

"If you had a conversation such as you have testified to in February, 1929, with Mrs. Alford, why didn't you give her some writing then evidencing the new standing?"

"Is it not a fact that you and Mrs. Wood have been rehearsing the memorandums you were using this afternoon, over there in the adjoining court room?"

It is contended that it was reversible error to permit the witnesses to give the above evidence as to the witness

Brown. Many of the authorities·on the question of character testimony hold that the amount and number of witnesses called for this purpose is a matter resting in the sound discretion of the trial court. It is impossible for us to say on this record that the evidence of the nine witnesses as to the good character of the witness Brown caused the jury to render a verdict for the defendant. The authorities do not attach much weight to such evidence and to hold that this testimony caused the jury to find for the defendant is not only speculative but highly conjectural. The lower court did not attach much credence to this testimony or the motion for a new trial would have been granted. We fail to see or observe an abuse of discretion in admitting this testimony. There is authority for such testimony. Wigmore on Evidence, Volume 2 (2d Ed.) pages 623-4, par. 1104, viz.:

" * * * It has been said, to be sure, by a few Courts that where, without actually introducing testimony, the opponent has effectively *insinuated the witness' impeachment*, his good character is then proper in rebuttal. But this extension is exceptional in its vogue. Moreover, the exception when an *accused* in a criminal case takes the stand is apparent only; for it is as, an accused that he may offer his good character in chief (*ante*, par. 56), and that character must concern the trait involved in the charge (*ante*, par. 59), and thus since only his character for veracity can (in most jurisdictions) affect him as a witness (*ante* par. 922), his evidence of character at that stage will not usually be the same as that which he could later offer in his own support as witness.

"The question thus always arises, under this general rule, When is the witness' character *brought into question* by the opponent, so as to open the way to evidence of good character in denial? This must depend on the nature of the opponent's impeaching evidence. It may be a direct assault

on the witness' character, in which case no doubt exists. But it may be evidence of a doubtful or ambiguous import, —for example, of bias, of a prior self-contradiction, of an error of fact, and so on through the whole series of kinds of discrediting evidence. It is obvious that the theory of each of these kinds of evidence must be considered before it can be said whether it affects the witness' character. * * * "

This Court is committed to the general rule that the decision of the lower court is presumed to be correct and an appellate court will not reverse or disturb a judgment of the Court below unless there is something in the record to show that the lower court has committed an error on some material point by which justice has miscarried and wrong has been perpetrated on one of the parties, and plaintiff in error has not overcome this presumption as shown by the record. See Small v. Colonial Insurance Co., 92 Fla. 503, 109 So. 433; Britt v. State, 88 Fla. 482, 102 So. 761; State v. Merritt, 86 Fla. 164, 99 So. 230; Hoodless v. Jernigan, 51 Fla. 211, 41 So. 194; Clements v. State, 51 Fla. 6, 40 So. 432; Stover v. Stovall, 103 Fla. 284, 137 So. 294.

It appears that the conflict in the testimony presents on this record nothing more or less than a question of fact to be decided by a jury under appropriate instructions and that this court is without authority of law to substitute its conclusion or judgment on questions of fact for that of the jury. While this assignment may present technical error, we do not think or believe it sufficient ground upon which to base a reversal of the judgment in this case.

It is next contended that reversible error occurred when the court failed and omitted to sustain the objections made by counsel for plaintiff to language employed by attorneys Lichliter and Scott, of counsel for the defendant, when addressing the jury. We have carefully examined each of these assignments. While counsel is allowed a broad lati-

tude in presenting his case to the jury, they should at all times confine their argument to the evidence and issues presented, with logical deductions therefrom, and at all times stay within the record.

We fail to find error in these assignments. See Johnson v. State, 88 Fla. 461, 102 So. 549; Tyson v. State, 87 Fla. 392, 100 So. 254; Goshea v. State, 97 Fla. 621, 121 So. 797; Henderson v. State, 94 Fla. 318, 113 So. 689; Watkins v. Sims, 81 Fla. 730, 88 So. 764; Brown v. State, 91 Fla. 682, 108 So. 842.

It is further contended that the following charges were erroneus:

"The court instructs you, gentlemen of the jury, that if you believe from a preponderance of the evidence that Charles A. Brown, Jr. the payee named in the Avondale Company note, in evidence herein, received said note from Lilly H. Wood, with the consent of the plaintiff, Eleanor B. Alford, and thereafter pledged the same for a loan— pledged the same as security for a loan made to him by the defendant bank in the sum of $11,000.00, then the defendant became an innocent holder of value of said note, and you must find the defendant not guilty."

"The court instructs you gentlemen of the jury that you cannot find in favor of the plaintiff, unless you should belive from a preponderance of the evidence that Chas. A. Brown, Jr. obtained the Avondale Company note from Lilly H. Wood without the consent of the plaintiff, Eleanor B. Alford."

These charges, considered in connection with other charges or instructions given by the trial court, fail to show reversible error. The rule controlling these assignments is well expressed in the case of Lewis v. State, 55 Fla. 54, 45 So. 998, when this court said:

"It is settled law in this court that in passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instructions or charge must fail, unless under all peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, and authorities therein cited; Davis v. State, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, decided here at this term. It is also settled law here that where an instruction, as far as it goes, states a correct proposition, of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if previous or subsequent charges or instructions are given containing the required qualifications or exceptions. It is not required that a single instruction should contain all the law relating to the particular subject treated therein. Atlantic Coast Line R. Co. v. Crosby, *supra,* and authorities therein cited."

The motion for a new trial, and amendments thereto, contains a number of grounds which raise the sufficiency of the evidence to sustain the verdict, and likewise challenge the accuracy of the charges or instructions upon the law of the case. The motion also asks for a new trial on newly discovered evidence, which is in the form of an affidavit and exhibits attached thereto. We are not satisfied as to the diligence of the plaintiff in connection with the newly discovered evidence. It is true that the entire charge to the jury covers the issues presented and we fail to find error. It cannot be overlooked that the conflict in the evi-

dence was for the jury. The plaintiff and the witness Brown made contradictory statements about the substitution of the security with Mrs. Wood. We hold that a jury should settle the issue of fact.

If the evidence is conflicting or will admit of different reasonable inferences, or if there is evidence to prove the issue, it should be submitted to the jury as a question of fact to be determined by them and not taken from the jury and passed upon by the court as a question of law.

See Cameron, etc. Co. v. Law-Engle Co., 98 Fla. 920, 124 So. 814; McKinnon v. Johnson, 57 Fla. 120, 48 So. 910; Starks v. Sawer, 56 Fla. 596, 47 So. 513; Florida Cent. etc. R. Co. v. Williams, 57 Fla. 406, 20 So. 558; Southern Express Co. Williamson, 66 Fla. 286, 63 So. 433; L. R. A. 1916C 1208; Bass v. Ramos, 58 Fla. 161, 50 So. 945, 145 Am. St. Rep. 105; Wood Lbr. Co. v. Gipson, 63 Fla. 316, 58 So. 364; Paul v. Commercial Bank, 69 Fla. 62, 68 So. 66; Johnson v. Louisville & N. R. Co., 59 Fla. 305, 52 So. 195; Williams v. Sherry 94 Fla. 998, 114 So. 849; German-American Lbr. Co. v. Brock, 55 Fla. 577, 46 So. 740; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121, 56 So. 946. See also Cooney-Evkstein Co., 66 Fla. 246, 63 So. 659, Ann. Cas. 1916C 163; Gunn v. Jacksonville, 67 Fla. 40, 64, So 435; Davis v. Ivey, 93 Fla. 387, 112 So. 264; Florida East Coast Ry. Co. v. Haynes, 66 Fla. 589, 64 So. 274; Jacksonville v. Glover, 69 Fla. 701, 69 So. 20; Gravette v. Turner, 77 Fla. 311, 61 So. 476; Gulf Refining Co. v. Ankeney, 102 Fla. 151, 135 So. 521.

We have given careful consideration to each assignment of error made and argued in this court. While harmless error possibly developed or accrued in one or two adverse rulings to plaintiff below, but in reviewing the entire record we feel or believe substantial justice was awarded in the lower court.

Therefore the judgment appealed from is hereby affirmed. It is so ordered.

WHITFIELD, P. J. and CHAPMAN, J., concur.

BROWN J., concurs specially.

BUFORD, J. J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21A of the Rules of this Court.

BROWN, J. (concurring).—I concur in the foregoing opinion that no reversible error appears. As I see it, this case turned upon clear-cut issues of fact, which were fairly submitted to the jury. The testimony upon these issues was sharply in conflict. It was a typical "jury case"; a case in which the verdict of the jury, upon conflicting testimony, cannot, under our former decisions, be disturbed by the appellate court. The charge of the Court was lucid and comprehensive, and eminently fair and impartial. While some rather close and difficult questions were presented to and ruled upon by the trial judge, I think his rulings on all important points were correct and that no prejudicial error has been made to appear. After all, this case turned upon disputed questions of fact, which were finally settled by the jury, and the trial judge declined to disturb their verdict. His action should be affirmed.

## ON PETITION FOR REHEARING

PER CURIAM.—On petition for rehearing it is contended by counsel for plaintiff in error that after this Court held that a pledgee with a right of possession may sue in an action of trover for the conversion of property, and a pledgee of a nonnegotiable note has a lien upon the note, and can maintain an action in trover for the conversion thereof, that this Court should have taken an additional step by holding,

viz: that the lien of the pledgee is not lost upon the pledgor's obtaining possession of the property by fraud, or other wrongful act, even though it is sold by the pledgor to an innocent purchaser. Also, the lien is not lost by the pledgee's being deprived of the possession of the property by the wrongful act of an agent or of a third person.

While the adoption by this Court of the suggested principle of law may be safe and a correct principle, but in disposing of the case at bar we do not think it was necessary in the disposition of the case to consider the adoptions of the suggested statement of the law. It is very probably that in adopting the contention here made that questions of fact would arise and a jury question present itself.

We think many of the questions presented in the petition for rehearing were questions of fact determined by the jury under appropriate instructions by the trial court and have been fully considered and disposed of in the original opinion.

It is further contended that the admission into evidence of character witnesses for Brown was reversible error. The burden of showing error rests on the party asserting it, and we are not satisfied by the argument at the bar of this Court, and from the authorities cited in the briefs, and from a careful study of the record that reversible error occurred in receiving into evidence of character witnesses for Brown. We have given careful consideration to the authorities cited in connection with this assignment.

We have given due consideration to each ground of the petition for rehearing. The record has been re-checked and briefs re-examined in the light of the suggestions appearing in the petition. We are not convinced that error exists in the record.

The petition for rehearing is denied.

WHITFIELD, P. J., and BROWN and CHAPMAN, J. J., concur.

BUFORD, J., concurs in opinion and judgment.

Justices TERRELL and THOMAS not participating as authorized by Section 4687 Compiled General Laws of 1927 and Rule 21A of the Rules of this Court.