139 So.2d 495 (1962)
Armand G. MORIN, Appellant,
v.
Harry HALPERN, Appellee.
No. 2518.
District Court of Appeal of Florida. Second District.
March 28, 1962.
*496 Granvel S. Kirkland; Miller, Cone, Owen, Wagner & Nugent, West Palm Beach, for appellant.
Samuel H. Adams of Jones, Adams, Paine & Foster, West Palm Beach, for appellee.
WHITE, Judge.
Armand G. Morin, plaintiff below in a negligence action, assigns error in the judgment on verdict assessing his damages at $36.00. The amount awarded by the jury was the exact cost of repairing the plaintiff's automobile, thus allowing him nothing for personal injury which he claims to have sustained as a result of defendant's negligence.
On May 23, 1959 the plaintiff was alighting from his automobile in a motel parking lot when the defendant backed his automobile into the plaintiff's vehicle. The impact caused the plaintiff's door to swing closed and in so doing it allegedly struck the plaintiff's left ear. A direct consequence of the collision was a dent in the plaintiff's automobile which cost $36.00 to repair. The plaintiff stated at the time and place of the collision that he was not injured. He proceeded home. He claims, however, that about twenty minutes thereafter his ear began to bleed and he had a severe headache. He asserted that he developed inner ear trouble and loss of hearing, incurred expenses and suffered other detriment. The defendant denied liability and the case was tried with the aforesaid result. Plaintiff's motion for a new trial was denied, and this appeal ensued.
The plaintiff claimed that his ear was normal prior to the alleged injury. All the doctors who testified agreed that the plaintiff had lost hearing in his left ear, but they disagreed as to whether the condition was caused by the collision or by a pre-existing disease. There was considerable evidence of antecedent ear disease. It is the contention of the plaintiff-appellant that the evidence, considered in the light most unfavorable to him, shows that he sustained some personal injury; that even if there was pre-existing disease, he sustained an injury which aggravated it. He insists that in order to award him no amount whatsoever for personal injury, the jury necessarily disregarded the court's instructions. The plaintiff accordingly seeks reversal of the judgment and the granting of a new trial.
Plaintiff on appeal protests that the verdict was inadequate and was (1) grounded upon a misconception of the law and the evidence, (2) induced by an inflammatory statement of the doctor who testified for the defendant. We shall consider first whether or not the record shows that the verdict was so inadequate that the jury must have misconceived the law and the evidence. Inasmuch as the verdict was for the exact amount of the property loss sustained by the plaintiff, the jury obviously concluded that the plaintiff either sustained no injury at all or that he suffered no damaging injury or appreciable aggravation of a pre-existing condition. Preliminary to further discussion we refer briefly to applicable principles governing appellate review.
The trial court's decision on motion for a new trial is clothed with a presumption of correctness and will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. Kraus v. Osteen, Fla.App. 1962, 135 So.2d 885; Leavstrom v. Muston, Fla.App. 1960, 119 So.2d 315; Cloud v. Fallis, Fla. 1959, 110 So.2d 669. A jury verdict likewise should not be disturbed unless upon an inspection of the entire record, in the light most favorable to the party in whose favor the verdict was rendered, it is clearly apparent that the verdict was contrary to the evidence or that the *497 jury was influenced by passion or prejudice. Butler v. Borowsky, Fla.App. 1960, 120 So.2d 656.
Was it within or beyond the range of logic for the jury to conclude, from matters within the record, that the plaintiff's ear condition was not proximately caused or aggravated by the defendant's negligence? It is a close question, but we think the jury could have returned a valid verdict either way. The defendant testified that his automobile was "crawling" at the time of the impact and that it caused only a small dent in the left rear fender of the plaintiff's automobile. The plaintiff stated at the scene that no one was hurt, although he later testified to the contrary and his wife allegedly noticed a swollen condition around his ear. The incident occurred on Saturday and the plaintiff stated that he could not make an appointment with the doctor until the next Tuesday. He went to work on Monday. On the succeeding Tuesday and Friday he went to the Palm Beach Clinic and was treated by John B. Nicholson, M.D. The following week Dr. Nicholson was on vacation and the plaintiff was treated by Laurie M. Teasdale, M.D.
The plaintiff continued working from May 1959, the time of the accident, until February 1960 when he began having dizzy spells. He testified that prior to the accident his hearing was not diminished but that he had wax trouble many times. He stated:
"Q. You never had any drainage in either ear prior to the accident?
"A. Drainage of wax, yes.
"Q. Could have been pus, could it not?
"A. Could have been."
Oliver M. Jones, M.D. examined the plaintiff in April 1956, approximately three years prior to the accident, and the plaintiff complained of headaches. Dr. Jones testified that he did not use an audiometer test or tuning fork test, but that he did casually inspect plaintiff's ears and found no evidence of disease at that time. Clifford McIntyre, M.D. saw the plaintiff on May 10, 1960, almost a year after the accident. He testified that the plaintiff attributed his difficulty to the accident. Dr. McIntyre's testimony was to the effect that the plaintiff's ear drum was punctured and infected, causing an impairment of the eighth nerve and as a consequence otitis media or middle ear infection. Dr. McIntyre was not an ear specialist. He obtained the plaintiff's history from the plaintiff himself and from the three year old examination report of Dr. Jones.
Dr. Teasdale, previously referred to, had been an eye and ear specialist for twenty years. After testifying concerning the plaintiff's ear troubles and treatments, Dr. Teasdale stated that he saw the plaintiff one month after the accident and that there was no evidence of any injury as a result of the accident. This doctor regularly treated the plaintiff for a period of approximately one year. He stated that it was "quite possible" that the accident aggravated the ear infection; but that sclerosis of the mastoids is a progressive disease process and that, in his opinion, the plaintiff had this condition long prior to the accident. We find nothing in Dr. Teasdale's testimony expressing, as plaintiff-appellant contends, that the accident probably caused the condition or probably aggravated it. To the contrary Dr. Teasdale testified:
"Q. * * * Doctor, do you have an opinion as to whether or not the injury he described was causally related to the condition which you observed?
"A. No, I don't think it was.
"Q. All right, do you feel it was an aggravation of a latent condition of the ear which was the mastoiditis you later learned about on the X ray?
"A. I think the answer to that question is no.

*498 * * * * * *
"Q. Then, it is at least as probable that the condition which you observed during your treatment was brought about by the disease process as it is to say that it was brought about by the car door, is that a fair statement?
"A. I think it is a fair statement, yes.
* * * * * *
"Q. Now, Doctor, it is a fair statement that the drainage of the left ear which you observed when the patient was treated by you is just as probably caused by the disease condition as by the car door?
"A. I think that is a fair statement.
"Q. And is it fair, Doctor, to say that it was more probably caused by the disease condition than by the car door? We are only looking for your best opinion here.
"A. I would say that that is a fair statement, in my opinion.
"Q. That it was more probably caused by the disease?
"A. Yes."
Dr. John B. Nicholson, previously referred to, had been an eye, ear, nose and throat specialist since 1939. He testified that he first saw plaintiff on May 26, 1959, three days after the date of the accident. In his opinion the plaintiff "had running ears many years before" and that the location of the perforation suggested that it was an old perforation. It was this doctor's opinion that the plaintiff's disturbance may or may not have been activated by his alleged injury. He testified in substance that the condition of plaintiff's ear was a long standing, chronic and purulent infection of the middle ear and that it was completely inconceivable that plaintiff's hearing loss could be due to injury on May 23, 1959 as claimed by the plaintiff.
Witness Robert C. Ifft, M.D. was an eye, ear, nose and throat specialist who had been practicing a little over a year in West Palm Beach. He first examined the plaintiff on October 24, 1960, approximately a year and a half after the accident. His diagnosis was substantially the same as that of the other doctors, viz. that the plaintiff had sclerosis of his mastoids causing a complete loss of hearing in his left ear and a partial loss of hearing in his right ear. Dr. Ifft's testimony, however, contained the following statement tending to favor the plaintiff's case:
"Q. Now, Dr. Ifft, do you have an opinion as to whether or not the condition which you observed as to the left ear was caused by or precipitated by or aggravated by the accident which was described to you in the history you took?
"A. I think it was probably caused by the accident. * * *"
Again:
"A. I think that it was probably aggravated or totally caused by the accident."
On cross examination Dr. Ifft affirmed that he based his diagnosis on the history that he received from the plaintiff who stated that he had no appreciable ear trouble prior to the accident.
Applying the test previously noted as set forth in Butler v. Borowsky, Fla.App. 1960, 120 So.2d 656, we conclude that it is not illogical that a reasonable jury could have found that the plaintiff did not suffer ear injury or aggravation of an existing ear impairment as a result of the accident on May 23, 1959. We now proceed to consider the second point on appeal.
Plaintiff's second point on appeal is that the trial court erred in denying his motion for a new trial inasmuch as certain medical testimony was biased, prejudicial and premeditated and that its effect *499 was not cured by the court's instruction to the jury. The following includes the protested part of the testimony of Dr. John B. Nicholson:
"Q. Based upon the history you received from Mr. Morin, Doctor, it is your opinion that he sustained an injury to the ear which caused an aggravation of the previous condition which you have described?
"A. I have no reason to doubt that.
"Q. Well, is it 
"A. If  excepting,  yes, you said based upon the history, yes, the answer is `yes'.
"Q. Dr. Nicholson, isn't it true, sir, that 
"A. Could you speak a little more towards me?
"Q. Yes, Dr. Nicholson, it is true, isn't it, sir that medical doctors do disagree at times?
"A. You know I understand  I am not trying to be facetious, but I understand that you lawyers feel that you can buy any kind of medical testimony that you want.
"MR. WAGNER: I move to strike that as not responsive, hostile and inappropriate.
* * * * * *
"THE COURT: Gentlemen of the jury, the Court instructs you to entirely disregard the last statements made by the witness who has just left the stand, the remarks were highly improper, uncalled for and casts a reflection upon the entire Bar Association, therefore, disregard entirely whatever he said."
Counsel for the plaintiff charges that the foregoing comment by Dr. Nicholson justified the granting of a new trial; and counsel cites Texas Employers' Insurance Association v. Walker, Tex.Civ.App., 1955, 284 S.W.2d 795; Kaufman-Straus Co. v. Short, 1949, 311 Ky. 78, 223 S.W.2d 367, to show that such a statement is within the class of statements made by counsel before the jury that are so prejudicial that their effect cannot be cured by instruction to disregard them. Dr. Nicholson's testimony, however, does not show premeditation or prejudice toward the plaintiff. The doctor made an unfortunate statement and the trial judge properly instructed the jury to disregard it. There was no prejudicial error.
It is the prerogative of the trial judge to determine within his reviewable discretion whether the conduct of a person in the presence of the jury is such as to preclude impartial consideration of the case and so vitiate the trial. 88 C.J.S. Trial § 52, p. 139. In Wirt v. Fraser, 1947, 158 Fla. 777, 30 So.2d 174, the jury awarded a verdict of $25,000.00 against the appellant for wrongful death by killing the appellee's husband with a pistol. While on the witness stand the plaintiff-appellee began to shed tears and ceased talking and placed a handkerchief over her eyes. A motion for mistrial was denied and the judgment was affirmed. The court held that the trial judge did not abuse his discretion when he admonished the jury not to be influenced by the incident. See also Alford v. Barnett National Bank of Jacksonville, 1939, 137 Fla. 564, 188 So. 322; Romano v. Palazzo, 1922, 83 Fla. 243, 91 So. 115.
In our research we have considered the case of Bullock v. Branch, Fla.App. 1961, 130 So.2d 74, wherein counsel for the defendant objected to the so-called "Golden Rule" argument which plaintiff's counsel presented to the jury. The trial court overruled the objection. Counsel for the defendant did not move the court to instruct the jury to disregard the argument. The defendant appealed and obtained a reversal, the court holding:
"By overruling the defense counsel's objections and failing to instruct the jury to disregard the argument and failing even to caution the plaintiff's *500 attorney against continuing to argue along the same tenor, the trial court no doubt gave the impression to the jury that the argument correctly reflected the applicable law in that they could properly consider what they themselves would want in determining the award of damages."
The decision just quoted would seem to favor the appellant in the instant case, but it is noted that the court went on to suggest that the improper argument would have been cured had the trial judge instructed the jury to disregard the argument. In the instant case the trial judge did, in fact, so instruct the jury.
There appearing no prejudicial error in the trial proceedings, the judgment appealed is affirmed.
Affirmed.
ALLEN, Acting C.J., and SMITH, J., concur.