**TEXAS EMPLOYERS' INSURANCE AS-SOCIATION, Appellant,**

v.

**James O. WALKER, Appellee.**

No. 15655.

Court of Civil Appeals of Texas.

Fort Worth.

Nov. 18, 1955.

Rehearing Denied Dec. 16, 1955.

796

Crowley, Wright, Miller & Garrett and James E. Wright, Fort Worth, for appellant.

Donald & Donald and J. M. Donald, Bowie, for appellee.

MASSEY, Chief Justice.

From a judgment for the plaintiff employee in a workmen's compensation case, the defendant insurer appeals.

Reversed and remanded.

The insurer's primary complaint is of the failure of the trial court to declare a mistrial in view of the unresponsive and voluntary statement, on cross-examination, of the employee's medical expert, Dr. L. D. Parnell, contrasting the wealth of the Insurance Company to the poverty of the employee.

After the introduction of medical testimony on direct examination, the insurer's attorney took Dr. Parnell on cross-examination and the following occurred:

"By Mr. Crowley:

"Q. You say disk damage is caused by the arthritis? A. Frankly, I think that the arthritis has diseased the disk and the fibrous tissue in there and weakened it until it wasn't strong enough to resist the injury that he had. I think that had something to do with it. I sure do. No question about it.

"Q. Dr. Parnell, do you do much work on cases where Donald & Donald are involved? A. Well, I testify for them some times. Not an awful lot, but then I testify for them *ever* now and then.

"Q. Just every now and then? A. I don't testify very often for them.

"Mr. June Donald: Haven't had but four in the last two years. A. That's about right.

"Q. What do you charge for your testimony, Dr. Parnell? A. Well, that depends on how much time it takes; how much preparation the patient has to have, and those things. I don't know—I charge for testifying. You mean just for testifying?

"Q. Yes. A. Oh, anywhere from $50.00 to $100.00, depending on the time I have. Maybe some times might amount to more than that, but usually, that will about catch it.

"Q. Now, isn't your standard fee $200.00? A. No, no (laughing). I just wish it was.

"Q. What do you charge to make an examination and report to The Industrial Accident Board?

"Mr. June Donald: Judge, I think that is immaterial. A. I never made one to them in my life.

"Q. You never made a report to The Industrial Accident Board? A. No.

"Q. Well, a report to be filed with The Industrial Accident Board? A. The only reports that I ever make is to the man who sends me a man for examination, and I examine him and make a report to him. I don't know what he does with it. If he sends it to the Accident Board, I know some times they do.

"Q. Well, what do you charge for— A. I don't have any set charge for that. I charge for the work I do. There's not much money to it. If I wanted to get in the money, Judge, I would get in with the insurance company, because they have got it. These poor men that are broke up haven't got it.

"Mr. Crowley: That was not responsive to any question, Your Honor, and we move the Court to grant a mistrial.

"The Court: Gentlemen, you will not consider the voluntary statement of the witness as any evidence in this case. It is not responsive.

"Mr. June Donald: Note our exception, if the Court please.

"Mr. Crowley: We move for a mistrial.

"The Court: Overrule the motion.

"Mr. June Donald: He called for it.

"Mr. Crowley: We object to the statement made by counsel—

"The Court: I will sustain the objection. Gentlemen, you will not consider the remarks made by counsel as any evidence in this case."

In the case of Kaufman-Straus Co. v. Short, 1949 (Court of Appeals of Kentucky), 311 Ky. 78, 223 S.W.2d 367 (to which case 88 C.J.S., Trial, § 121, p. 243, refers), the plaintiff's expert medical witness was on direct examination and the following question was asked: "'She said you sent her a bill when you dismissed her from the hospital for a hundred and fifty dollars; and have seen her several times since that. Would there be additional charges for that?'" In reply, the doctor stated: "'If Mrs. Short was having to pay that out of her own pocket, wasn't getting it from the insurance company or somebody else, I might give her the hundred and fifty dollars. The insurance company has got a lot of money; we try to add up to them once in a while.'" The trial court refused to grant a mistrial. The appellate court held that "* * * a mistrial should have been ordered or at least a new trial granted after the effect was manifested by the verdict." The state of affairs in that case more nearly approximates those existing here than in any case we have found.

The character of statement made in the instant case comes within the class of statements, when made by a plaintiff's attorney during an argument to the jury, which are uniformly declared to be so inflammatory and prejudicial that their harmful effects could not be fully withdrawn by an instruction of the trial court. Of course, Texas Rules of Civil Procedure, rule 434 has had some effect upon the decisions on the point since its effective date, September 1, 1941. But in the class of cases under consideration, the only effect the rule would have would be to require us to examine the statement of facts, in the light of the verdict and judgment, in order to determine whether the prejudicial effect thereupon, which must be presumed to have resulted from the unresponsive statement, may be considered to have been either disregarded by the jury or to have had no effect upon their deliberations. We have so examined the record and determined that the issues upon whether the employee's disability was due

to the injury complained of, and upon the extent and duration of his existing disability were pointedly in dispute. The jury found the employee to have sustained an 80% permanent partial general disability, of which the injury alleged by him to have occurred while in the course of his employment was a producing cause. There is, therefore, no doubt but that there would be reversible error in the case had the employee's attorney made the same statement Dr. Parnell made from the witness stand during the course of an argument to the jury.

Such statements, when made by a plaintiff's attorney during argument, have a degree of culpability. In 53 Am.Jur., "Trial", p. 680, sec. 967, "Grounds for Declaring Mistrial," we note the statement that a mistrial may be declared because of remarks made by witnesses for the purpose of influencing the jury. Undoubtedly, the thoughts of the authorities have dwelt in some degree upon the culpability of counsel or witness who commits the error. But we are of the opinion that the degree of guilt or innocence in the making of the statements is of no account. What controls is the degree of prejudice to the opposite party, and whether such party received a fair trial. Certainly, in this case the insurer was as greatly prejudiced by the statement made by Dr. Parnell, supposedly an impartial witness, as it would have been had the statement been made by the employee himself, or by his attorney. Each party to litigation is entitled to a trial of his case without the injection of any factor calculated to create unfairness or incite prejudice, whether it be social, racial, political or financial.

What we have said above disposes of the employee's contention that the harm in the statement was removed by the instruction of the court to the jury immediately after it was made. This is a case where the trial court was helpless to fully cure the error. The employee also contends that Dr. Parnell's statement was an answer to a question and was responsive. The charge is that insurer's counsel solicited the very answer he got when the statement in question was made. With this contention we do not agree. That our construction of the question asked immediately prior to the time the statement was made is the same construction as made by the reporter is apparent from the fact that he used dashes to indicate that the question asked was never completed. It is obvious from examination of Dr. Parnell's whole testimony that he was a witness who anticipated what the question was going to be before it was ever asked in some instances, and before either party's counsel completed their questions in others. We must assume that the question counsel intended to ask was a legitimate question, for there is no evidence that it would not have been. The employee further contends that Dr. Parnell was retaliating, as he was privileged to do under the circumstances, since counsel was inferring that he was the kind of a man who sold his testimony to the highest bidder and was ridiculing him and trying to cause the jury to deem his testimony unworthy of credence. It is apparent from the questions that had been asked prior to the time the statement was made that the only inference made against Dr. Parnell which would have tended to incite retaliation was upon the matter of the monetary charge he made when he testified for a party in litigation, and upon the inference that he charged for his "testimony" rather than for "testifying". But aside from any question as to whether such invited retaliation or as to the propriety of retaliation, it is apparent that the time for such had passed and that what Dr. Parnell was talking about at the time he made the statement was with reference to doing medical industrial work in the treatment of injured employees generally, or to the money to be made from such work and for the making of reports incident thereto. We have concluded that the prejudicial statement made was not invited, excused or justified.

There is another point of error brought forward on appeal which we have examined but which, in our opinion, is not such as would occasion a reversal of this

case, in view of the state of the record. The error is not such as would be likely to occur upon the occasion of another trial and will not be discussed.

Judgment is reversed and the cause remanded for another trial.