SHORES, Justice.
This is an appeal from a judgment entered on a jury verdict against the defendant, Best Plant Food Products, Inc., (hereinafter “Best”) in favor of the plaintiff, Dwight Cagle, on his action alleging breach of warranty, fraud, and deceit, and on a verdict in favor of Cagle on Best’s counterclaim based on an open account. We affirm.
Dwight Cagle was a 20-year veteran potato farmer in Jackson County, Alabama, when he was contacted by Best in 1982 in an effort to solicit his business and to convince Cagle to use Best's liquid plant food. A representative from Best met with Cagle at his farm and later created a “form” for Cagle to follow in using the plant food on his potatoes. In 1982, as a supplement to his usual farming methods, Cagle used Best’s liquid plant food on a 31-acre trial plot. In 1983, Cagle used the plant food on 160 acres of potatoes, but again, the plant food was used in conjunction with other fertilizers. In 1982 and 1983, Cagle had an average yield from his potato crop.
In 1984, Cagle used Best’s plant food as the exclusive fertilizer for his potato crop, which was a total failure. Cagle brought several different actions, but at trial the only actions remaining were the actions for fraud, deceit, and breach of warranty. Specifically, Cagle alleged that Best’s representative had stated that there was no need to use dry fertilizer in addition to the liquid plant food, and that as a result of his reliance upon the misstatements his 1984 potato crop was a complete failure due to the lack of essential nutrients.
During this period, Cagle became a distributor of the plant food and payments were made to Best according to the amount of plant food sold from inventory. As the basis for its counterclaim, Best contended that Cagle owed it for supplies already sold and for inventory still in Cagle’s possession.
Cagle sought $400,000 as compensatory damages and $1,000,000 in punitive damages. The jury returned a general verdict awarding Cagle $972,000 and finding in his favor on Best’s counterclaim.
There are three issues before us on appeal. First, Best contends that it was error for the jury' to fail to award it damages on its counterclaim for a past due account. Best states in its brief:
“[T]he cross-examination of [Best's] witness, Thatcher, who was offered to prove the current state of Cagle’s account for purposes of Best’s counterclaim, was a textbook course in advocacy. The bare transcript reveals an unprepared witness whose testimony got worse with each question. After testifying on direct examination about Cagle’s account, Thatcher became totally confused over the amount owing, the bookkeeping procedures, and the existence and location of critical documents.”
The trial court characterized Thatcher’s testimony as follows:
“The defendant’s proof of the amount due under its counterclaim was in a shambles at the conclusion of its case. A substantial number of the corporate books had been moved to Canada, and were not available at trial; the witness that was present knew very little about the books, and records, of the corpora *231 tion; and there were substantial conflicts and contradictions, in the records and testimony.”
Best asserts that “Thatcher was such a terrible witness that the jury must have hated him.” If Best’s own witness could not show the amount due on the open account, how can it be expected that a jury could properly determine an amount of damages? Based upon the record, it is apparent that Best failed to prove the amount of damages, which is a material element of an action on account. Parkway Properties, Inc. v. City of Huntsville, 370 So.2d 967 (Ala.1979). Due to Best’s failure to prove this material element, the jury properly found in favor of Cagle on the counterclaim based on account.
Next Best argues that the proof of causation was not legally sufficient to justify submitting the case to the jury. This argument is subsumed by the admission contained in the following passage quoted from Best’s reply brief.
“Viewing the evidence most favorably to the prevailing party, Best admits that there is sufficient evidence to support the jury’s verdict for compensatory damages for deceit or fraud (but not breach of warranty because of the failure to give proper notice). If the jury believed Cagle’s testimony, and the testimony of Cagle’s witnesses, it could have properly found that Cagle's reliance upon Best’s misstatements — that there was no need to use dry fertilizer in addition to the plant food — caused damages in the compensatory amount of some $400,000.00.”
By admitting that there was sufficient evidence to support the jury’s verdict in awarding compensatory damages, Best necessarily admits that there was sufficient evidence to prove the element of causation. It is neither this Court’s duty nor function to search for error not presented for review and argued in the brief. Nichols v. Town of Mount Vernon, 504 So.2d 732 (Ala.1987). As a result of Best’s concession that there was sufficient evidence to support the jury’s verdict, the issue of causation at the appellate level is moot, and it is not our function to research and develop arguments for issues that are conceded on appeal.
However, we have read the record and we are convinced that Cagle offered evidence from which the jury could have concluded that the reason his crop failed was because the plant food recommended by Best and used by Cagle was inadequate— literally — to raise potatoes. In fact, there was no evidence to the contrary.
Best’s instruction book claimed that the following amounts of nutrients were sufficient to grow potatoes: 29.16 pounds of nitrogen, 58.32 pounds of phosphorus, and 29.16 pounds of potassium per acre. However, all of the experts testified without dispute that 120 pounds of nitrogen, 150 to 200 pounds of phosphorus, and 150 to 200 pounds of potash per acre are required to produce potatoes. There was no evidence of any other possible cause of the crop failure.
Best’s final argument is that the evidence does not support the award of punitive damages. This argument is not persuasive. Punitive damages are warranted if the evidence establishes that the misstatements were made with an intent to deceive or defraud. Ex parte Lewis, 416 So.2d 410 (Ala.1982); American Honda Motor Co., Inc. v. Boyd, 475 So.2d 835 (Ala.1985).
The following abstract from the trial judge’s order denying Best’s motion for new trial supports the jury’s finding that Best’s agent acted with an intent to deceive.
“There was substantial evidence from which the jury could have found that the Defendant’s agents willfully made false representations to the Plaintiff, knowing them to be false, and with the intent to deceive the Plaintiff.
There was evidence from which the jury could have found that there was a flagrant scheme perpetrated by the Defendant on the Plaintiff, and others, to sell an ineffective food plant product.
This Court is not satisfied that the verdict in this case was the result of any bias, passion, or prejudice on the part of the jury.”
We agree that there was sufficient evidence to support the jury’s determination that the misstatements were made with an *232 intent to deceive; therefore, punitive damages were properly awarded.
Cagle had been using approximately 1500 pounds of dry granular fertilizer per acre on his potato crops prior to dealing with Best. This 1500 pounds of dry fertilizer would produce approximately 195 pounds of nitrogen, 195 pounds of potassium, and 195 pounds of phosphorus. The dry fertilizer cost $7.50 per 100 pounds, or approximately $112.50 per acre.
Best’s representative told Cagle that one gallon of Best’s liquid plant food weighed 12 pounds and would provide nutrients equivalent to 100 pounds of dry fertilizer. At a cost of $2.80 per gallon, and using the recommended 25 to 30 gallons per acre, it would have cost Cagle $84.00 per acre to fertilize his potatoes using Best’s liquid plant food. However, it was proven that one pound of liquid plant food was comparable to only one pound of dry fertilizer and that the liquid plant food would produce only 1.2 pounds of nutrients per gallon. At this rate, it would require 162 gallons of liquid plant food to provide the necessary nutrients. It would have cost Cagle $454.72 per acre to purchase enough liquid plant food to provide his potato crop with adequate nutrients.
This evidence was sufficient to allow the jury to find that there was a flagrant scheme perpetrated by Best to sell Cagle an ineffective liquid plant food product.
We note that Best also requested a new trial on the ground that the amount of the award was excessive. In denying the motion for new trial, the trial judge sufficiently stated his reasons in the record and we need not remand this cause under the authority of our decision in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986).
Therefore, the judgment is affirmed.
AFFIRMED.
JONES, ALMON, ADAMS and STEAGALL, JJ., concur.