**GENEVA COUNTY BOARD OF EDUCATION, Plaintiff–Appellee,**

v.

**CNA INSURANCE COMPANY; and Continental Casualty Company, Defendants–Appellants,**

**Alexander & Alexander of Texas, Inc., Defendant.**

No. 88–7157.

United States Court of Appeals, Eleventh Circuit.

June 8, 1989.

---

1492

Ronald G. Davenport, Montgomery, Ala., Darryl Lowe, Knoxville, Tenn., for defendants-appellants.

M. Dale Marsh, Cassady, Fuller & Marsh, Enterprise, Ala., for plaintiff-appellee.

Before JOHNSON, HATCHETT and COX, Circuit Judges.

COX, Circuit Judge:

Following a jury trial in this diversity action, the district court entered judgment in favor of Geneva County Board of Education ("the Board") and against Continental Casualty Company ("CNA") for compensatory and punitive damages. CNA appeals. We affirm in part and reverse in part.

## I. BACKGROUND

The evidence at trial which is pertinent to this appeal was essentially without dispute, and established the following facts: On August 23, 1982, Maryann Hidle, a teacher employed by the Board, filed a Charge of Discrimination against the Board with the Equal Employment Opportunity Commission (EEOC), alleging that on August 11, 1982, she was denied employment as an assistant principal because of her sex. The Board received notice of the filing soon thereafter, and on September 20, 1982, attorney John Knowles advised the EEOC that he would be appearing for the Board at a conference scheduled in October.

Considering this a propitious time to attempt to procure insurance covering the Board's liability in matters of this kind, the Board undertook to obtain some insurance.

Bob Birch, the Board employee who supervised its insurance program, telephoned Alexander and Alexander of Texas, Inc. ("Alexander and Alexander"), to inquire about errors and omissions insurance for the Board.[1] What transpired in this telephone conversation was disputed at trial. Birch testified that he talked with Richard Petter of Alexander and Alexander; that he specifically told him that one of their teachers had already filed a complaint with the EEOC alleging sex discrimination; and that Petter led him to understand that the claim would be covered under a "prior acts endorsement" if the teacher later filed a lawsuit. Petter, on the other hand, denied having any such conversation with Birch.

On October 8, 1982, Birch and James Reeder, Superintendent of the Board, signed and submitted to Alexander and Alexander a formal application for coverage, declaring that "to the best of their knowledge, the statements set forth herein are true", and answering the pertinent questions in the application as follows:

11. No claim, which, if insurance had been in force similar to that now proposed, would have fallen within the scope of such insurance has been made or is now pending against any persons proposed for insurance, except as follows: none.

13. No person proposed for this insurance is cognizant of any act, error or omission which he has reason to suppose might afford valid grounds for any future claim such as would fall within the scope of the proposed insurance, except as follows: none.

14. The school district, board, and/or its employees, have not been involved in or have any knowledge of any pending federal, state, or local legal actions or proceedings against the school district, its board members, or employees except as follows: sex discrimination (sic) case–1. The policy issued by CNA provided insurance against the Board's liability for claims made against it for "Wrongful Acts" occurring during the policy period.[2] It contained, however, a "Prior Wrongful Act Endorsement," which extended coverage for "Wrongful Acts" occurring prior to the inception date of the policy, subject to the following provision:

The coverage afforded by this endorsement shall not apply to any claim, suit, action or proceeding pending at the effective date of this endorsement or to any Wrongful Act if, at the inception date of this endorsement, the School District or an Assured could reasonably have expected that a claim, suit, action or proceeding would result therefrom.

On March 28, 1983, Hidle filed suit against the Board in federal court, alleging discrimination on the basis of sex. The Board retained an attorney to defend the case. No notice of the suit was given CNA at this time. The case was tried, and the district court ultimately entered judgment in favor of the Board.

In September 1984, attorney Donald Sweeney, who had been retained by the Board to represent it in Hidle's appeal of the district court judgment against her, telephoned Yvonne Pickens of CNA and gave CNA its first notice of the Hidle claim. It is the conduct of CNA employees Pickens and Debbe Hamby following this call from Sweeney that forms the basis of the Board's estoppel and fraud claims in this case. Sweeney testified that, despite repeated conversations with Pickens during this period of time, Pickens never indicated to him that there was no coverage. Sweeney also testified that he relied on representations by employees of CNA that there was coverage,[3] and communicated that re-

---

1. Alexander and Alexander administered endorsed policies of the Alabama Association of School Boards.

2. The policy was an indemnity policy which did not require CNA to provide a defense in suits against the Board.

3. Significantly, this testimony was in response to leading questions proffered by the Board's attorney in this case. For the sake of completeness, we recite the relevant portions of the transcript as follows:

Q If there had been no coverage would there have been any reason for you and Debbe to have been working together?
A Well, I had other cases, but that indicates that she was going to be working with me.

liance to members of the Board. Sweeney did not, however, identify any specific statement of Pickens or Hamby indicating that the policy provided coverage for the Hidle claim, nor did he identify any affirmative statement by him regarding coverage in which they acquiesced by silence. Pickens testified, on the other hand, that she never made any statement to Sweeney indicating that the policy provided coverage for the Hidle claim because she could not make such a determination without having a copy of the policy before her. There is no testimony in the record to indicate that Hamby ever stated that the policy provided coverage for the Hidle claim, or that she silently acquiesced in the face of such an assertion by anyone representing the Board.

In May 1985, Yvonne Pickens wrote the Board requesting a "narrative report explaining the facts surrounding and leading up to this lawsuit." Later another CNA employee, Debbe Hamby, began handling the file. Not having received the narrative report requested in May, she again requested that the Board provide a narrative report. No narrative report was provided. Hamby asked attorney Sweeney for a copy of the EEOC complaint and was told that neither he nor the Board had a copy. Hamby then contacted the EEOC and determined that the Hidle complaint was filed with the EEOC on August 30, 1982—prior to the inception date of the policy.

CNA assigned the file to an attorney for review of the coverage question. Subse-quently, it advised the attorney for the Board on August 25, 1986, that there was no coverage for the Hidle claim because it was pending when the policy was written, and the Board had notice of the claim before it applied for the policy.

Thereafter, CNA and Joe Hughes, attorney for the Board, agreed upon a settlement of the Board's claim against CNA. The facts surrounding settlement negotiations were disputed at trial. Evidence adduced by CNA supports its position that Joe Hughes, an attorney for the Board, was authorized by the Board to accept a settlement offer tendered by CNA; that Hughes communicated this acceptance to CNA both by telephone and by letter; and that CNA, pursuant to the accepted offer, issued a settlement draft to the Board as soon as it could be processed, which draft was received and ultimately returned by the Board. Evidence adduced by the Board, on the other hand, supported its contention that Hughes was only authorized to accept the settlement offer before a given deadline, and only if CNA tendered immediate payment; that Hughes communicated the acceptance to CNA after the deadline established by the Board; and that CNA did not tender its draft as promptly as the Board had contemplated.

## II. PROCEDURAL HISTORY

The Board filed suit against CNA, and against Alexander and Alexander.[4] The

---

Q And the memo is in reference to which case, Mr. Sweeney?
A The Hidle case.
Q Mr. Sweeney, based on what Mrs. Pickens told you regarding coverage and the various exhibits that have been introduced here today and the work that you have performed in regard to this case, did you rely on the fact that there was coverage for the board in the Hidle case?
A Yes, I did.
Q Did you express to the board what you had learned from CNA and from Ms. Pickens?
A Yes, I did.
Q What did you advise the board regarding coverage, which is shown here in your letter of October 10 of 1985?
A I advised them that CNA did have coverage, had indicated that they had coverage, "As you know, CNA has indicated that this matter comes within the scope of their coverage," so I, and I told them that they had to keep a running itemization of their expenses to comply with CNA's policy.
Q As a result of what you learned about coverage from CNA and communicated to the board, and in defending the case, did the board rely on the fact that there was coverage?
A I relied upon it, and in advising the board with legal steps to take, they relied on my recommendation.

4. It asserted two claims against Alexander and Alexander: (1) a contract claim, alleging that it entered into a contract with Alexander and Alexander to procure insurance for the Hidle discrimination claim, which it failed to do; and (2) a fraud claim, alleging that Alexander and Alexander misrepresented to the Board, with the intent to induce the Board to act thereon, that

two claims against CNA which were presented to the jury were both based upon the alleged representation by CNA employees after issuance of the policy that the Hidle claim was covered even though the Board knew about the claim at the inception date of the policy. The first claim, a claim for breach of contract predicated upon estoppel, asserted that CNA was estopped to deny coverage under the policy because the Board relied to its detriment upon the aforementioned representation. The second claim, a fraud claim, asserted that the representation was made intentionally and with knowledge of its falsity, or alternatively, that the representation was innocently made with reckless disregard for its truth or falsity; and that the representation was made with intent to induce the Board to act upon it.[5] At the close of all the evidence, CNA moved for a directed verdict, which motion was denied. The estoppel and fraud claims were submitted to the jury with written questions pursuant to Fed.R.Civ.P. 49, which questions were answered as follows:

### JURY VERDICT

### CLAIMS AGAINST CNA INSURANCE COMPANY

1. Was there a settlement agreement between the Geneva County Board of Education and CNA Insurance Co.?

YES___

NO _X_

(If "YES" skip questions # 2 and # 3; if "NO", answer questions # 2 and # 3)

2. May the Geneva County Board of Education recover on its *contract* claim against CNA Insurance Co.?

YES _X_

NO ___

3. May the Geneva County Board of Education recover on its *fraud* claim against CNA Insurance Co.?

YES _X_

NO ___

\* \* \* \* \* \*

### DAMAGES

6. What, if anything, may the Geneva County Board of Education recover in *compensatory damages*, that is, for attorney fees billed by Mr. Hughes, Mr. Knowles, and Mr. Sweeney?

$64,052.77

(You may award compensatory damages *only if* you answered "YES" to one or more of the above questions: # 2, # 3, # 4 or # 5, also, you may not award more than $64,052.77 for compensatory damages.)

7. What, if anything, may the Geneva County Board of Education recover in punitive damages from CNA Insurance Co.?

$175,000.00

(You may, in your discretion, award punitive damages *only if* you answered "YES" to question # 3 and you further find that the misrepresentation involved was made intentionally or was made recklessly and maliciously, oppressively or grossly.)

\* \* \* \* \* \*

CNA did not object to the form or content of the questions submitted to the jury, and did not object to the nature of the answers upon return of the verdicts. Judgement was entered on the verdict, which judgment additionally included whatever sums the Board is required to pay Hidle's attorney for fees and expenses in the *Hidle* litigation. (That figure was subsequently determined to be $171,456.39.) CNA then filed a timely motion for judgment notwithstanding the verdict, or, alternatively, for a new

the Hidle claim was covered under the CNA policy. The jury found in favor of Alexander and Alexander on both claims, and no issue relative to that finding is presented on this appeal.

**5.** The trial court's instructions to the jury are somewhat confusing on the question of when the representations of which the Board complains were made. The Board, however, has consistently taken the position that its claims against CNA are based upon representations made in September 1984, and thereafter, rather than representations made by Mr. Petter of Alexander and Alexander to Mr. Birch of the Board prior to issuance of the policy. *See* the Board's contentions in the pretrial order, R1, Tab 29, its attorney's opening statement to the jury, R4–21, its attorney's closing argument, R7–900, and its brief on appeal, pages 27–30.

trial, or, alternatively, for a remittitur. The motion was denied.

## III. DISCUSSION

 Initially, we decline to disturb the jury's conclusion that the Board and CNA did not reach an accord and satisfaction. The rule in Alabama is that an attorney's authority to settle an action must be expressed and specific. *See Crawford v. Tucker*, 258 Ala. 658, 64 So.2d 411, 416 (1952). Based upon the evidence adduced at trial, the jury in this case could reasonably have concluded that Hughes did not have actual authority to accept the CNA offer after the deadline proscribed by the Board; that Hughes did, in fact, communicate the acceptance *after* the deadline; and that, despite specific instructions from the Board, Hughes did not procure from CNA immediate tender of the settlement draft. We cannot say that such a conclusion was against the great weight of the evidence, *see Jackson v. Magnolia Beverage Company*, 742 F.2d 1305, 1307 (11th Cir.1984), *cert. denied*, 472 U.S. 1008, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985).

The jury in this case returned a general verdict awarding compensatory damages to the Board after finding in favor of the Board on both its estoppel and fraud claims. The jury also awarded punitive damages based upon a finding that CNA fraudulently represented that there was coverage for the Hidle claim, which misrepresentation was, in the words of the written questions submitted to the jury, "made intentionally ... or was made recklessly and maliciously, oppressively or grossly." CNA challenges the sufficiency of the evidence to support the jury's verdict in favor of the Board on the estoppel claim, but does not challenge the sufficiency of the evidence to support the verdict in favor of the Board on the fraud claim. CNA also argues that an award of punitive damages was inappropriate, or that, at least, the award should be remitted. We agree that an award of punitive damages was inappropriate, and will vacate that award. We decline to disturb the award of compensatory damages, however, because it was a general verdict awarding damages. The verdict was based in part upon a finding in favor of the Board on the fraud claim; the finding on the fraud claim is not challenged by CNA on this appeal. Because of our manner of disposing of this appeal, we need not decide whether there was sufficient evidence to submit the estoppel claim to the jury.

 It is well-settled under Alabama law that an award of punitive damages on a claim of fraud must be supported by a finding of malice, reckless disregard for the truth, or intent to injure. *See State Farm Fire & Cas. Ins. Co. v. Lynn*, 516 So.2d 1373 (Ala.1987); *Best Plants Food Products, Inc. v. Cagle*, 510 So.2d 229 (Ala. 1987); *Ford Motor Co. v. Burkett*, 494 So.2d 416 (Ala.1986). We conclude that the evidence in this case does not support a finding that any employee of CNA made a representation to the Board which she knew to be false, or with reckless disregard for its truthfulness, or with intent to injure. Indeed, the testimony adduced at trial does not reflect that any employee of CNA ever made any representation to the Board regarding coverage. The testimony upon which the Board relies in support of its fraud claim is that of attorney Sweeney to the effect that no employee of CNA ever indicated that there was no coverage despite repeated opportunities to so indicate. Whatever else may be inferred from such testimony, it does not support the Board's position that CNA made intentional representations regarding coverage which it knew to be false, or which recklessly disregarded the truth. The award of punitive damages, therefore, is not supported by the record. We express no opinion as to whether the evidence would support a finding of legal or constructive fraud, because that question is not presented on this appeal. In any event, we note that a finding of legal or constructive fraud would not support an award of punitive damages. *See Alabama Farm Bureau Mutual Casualty Insurance Co. v. Griffin*, 493 So.2d 1379 (Ala.1986).

 As we have stated, CNA challenges the sufficiency of the evidence to

support the Board's estoppel claim, but does not challenge the sufficiency of the evidence to support the jury's finding in favor of the Board on its fraud claim.[6] A general verdict will be upheld if it is supported by one of a number of theories upon which the case is submitted to the jury. *See, e.g., Sparks v. Milligan,* 295 Ala. 358, 330 So.2d 417 (1976). Since CNA does not challenge the jury's finding in favor of the Board on the fraud claim, we conclude that its challenge to the award of compensatory damages must fail, because the general verdict is supported by the jury's finding on that claim.

For the reasons stated in this opinion, the judgment of the district court is REVERSED to the extent that it awards punitive damages to the Board. The judgment is AFFIRMED in all other respects.

---

**6.** CNA does seek reversal on the basis of the inconsistency of the jury's verdicts. Because CNA did not object to the district court's charging the jury on both the contract and fraud claims, did not object to the form or content of the written questions submitted to the jury, and failed to request that the case be resubmitted to the jury upon its returning inconsistent verdicts, CNA waived the issue on appeal. *See Golub v. J.W. Gant & Associates,* 863 F.2d 1516, 1521 n. 4 (11th Cir.1989).