OVERSEAS PRIVATE INVESTMENT CORP., William Parker, Taino Farms, Ltd., Plaintiff–Appellees/Cross–Appellants,

v.

METROPOLITAN DADE COUNTY, Defendant–Appellant/Cross–Appellee,

South Dade Soil & Water Conservation District, Defendant.

No. 93–4821.

United States Court of Appeals, Eleventh Circuit.

March 17, 1995.

**1112**

Debra J. Snow, Robert M. Klein, Stephens, Lynn, Klein & McNicholas, P.A., Miami, FL, for appellant.

A. Wayne Lalle, Mary Boney Denison, Graham & James, Washington, DC, Sam Daniels, Barranco & Associates, Miami, FL, for appellee.

Before HATCHETT and ANDERSON, Circuit Judges, and FAY, Senior Circuit Judge.

FAY, Senior Circuit Judge:

This appeal addresses whether an inconsistent award of damages based on three separate liability theories requires a new trial on each issue. Because the verdict clearly shows the jury found defendants liable under each theory, we remand for a new trial on damages only.

## I. BACKGROUND

### A. The Plaintiffs

Plaintiff William Parker ("Parker"), as sole owner and shareholder of Taino Farms Limited ("Taino" or "Taino Farms"), raised papayas in Freeport, Grand Bahamas. Parker is a native of South Florida; Taino Farms, Ltd., is a Bahamian corporation. Plaintiff Overseas Private Investment Corporation ("OPIC") is a United States governmental agency that funds United States businesses engaged in projects in developing countries.

Parker applied for an OPIC loan in January of 1985. OPIC lent Taino Farms $502,-000. Parker executed a personal payment guaranty for the loan and a debenture providing that upon loan default all of Taino's assets would transfer to OPIC, with Taino retaining a right of redemption upon full loan repayment. OPIC further required Parker/Taino to get additional funding. As a result, Sir Jack Hayward cosigned a note with Parker at Barclays Bank for $360,000, with Parker being primarily and Hayward secondarily responsible for repayment.

Then, the web entangled! Parker/Taino defaulted on the loan; OPIC accelerated the loan, obtained a judgment, seized Taino's assets, and appointed a receiver for Taino. Hayward paid OPIC $250,000 to release Parker from the judgment; OPIC returned Taino's assets. Hayward paid off the Barclays loan; Hayward became sole owner and shareholder of Taino. Two days before trial

in this case, the plaintiffs agreed to allocate among themselves any verdict proceeds recovered. Under the agreement, Parker and Taino each would receive 40 percent of any recovery, and OPIC would receive the remaining 20 percent.

### B. The Defendants

Defendant Metropolitan Dade County, through its Miami Dade County Water and Sewer Authority ("Metro Dade County" or "the Authority"), supplied sludge to Defendant South Dade Soil and Water Conservation District ("the District"), an independent entity run by an elected board of supervisors. The District then sold the sludge to others, including Plaintiff Parker, for use as an agricultural fertilizer. Plaintiffs alleged, and the jury found, that the District acted as Metro Dade County's agent in the sludge sale to Parker. Defendant Metro Dade County denied the agency and argued that the District merely was one, nonexclusive customer of the Authority. The District marketed the sludge under the tradename daorganite, which is short for Dade County Natural Organics, and promoted it as being heat treated and pathogen free.

### C. The Injury

In 1985, Parker purchased 20 tons of daorganite to fertilize his 55 acre papaya crop at Taino Farms. Later that same year, he ordered another 296 tons to fertilize a new 110 acre papaya crop. Some time after applying the daorganite, the papaya crop yellowed and died. Parker contended, and the jury found, that daorganite caused the crop failure. Despite the District's representations, daorganite was neither heat treated nor pathogen free; that is, living organisms remained in the sludge, producing toxic gases that destroyed the plants's root systems.

This suit, brought under 28 U.S.C. § 1332, revolves around the crop loss and resulting financial failure of Taino Farms, Ltd.

## II. STANDARD OF REVIEW

■ We review the district court's interpretation of state law *de novo*. *Brown v. Nichols*, 8 F.3d 770, 773 (11th Cir.1993).

When reviewing the district court's denial of defendant's motion for judgment after trial (JNOV), 826 F.Supp. 1564, we consider *all* the evidence presented at trial in the light and with all reasonable inferences most favorable to the nonmoving party. *Maccabees Mut. Life Ins. Co. v. Morton*, 941 F.2d 1181, 1183 (11th Cir.1991). Such a motion should be granted only where reasonable people could not have reached the verdict in question. *Id.* 1183–84.

■ We review the district court's decision to deny a new trial for an abuse of discretion. *Burger King Corp. v. Mason*, 710 F.2d 1480, 1486 (11th Cir.1983), *cert. denied*, 465 U.S. 1102, 104 S.Ct. 1599, 80 L.Ed.2d 130 (1984). Under Rule 59(a) of the Federal Rules of Civil Procedure a new trial may be granted "on all or part of the issues." The standard governing partial new trials has been enunciated by the Supreme Court as:

> [w]here the practice permits a partial new trial, it may not properly be resorted to unless it clearly appears that the issue to be retried is so distinct and separable from the others that a trial of it alone may be had without injustice.

*Gasoline Prods. v. Champlin Refining Co.*, 283 U.S. 494, 500, 51 S.Ct. 513, 515, 75 L.Ed. 1188 (1930).

■ In reviewing whether the evidence suffices to support the verdict, we consider the evidence and all reasonable inferences in the light most favorable to the prevailing party. *Pearce v. Wichita Cty.*, 590 F.2d 128, 132–33 (5th Cir.1979). A verdict may be overturned "only [i]f the facts and inferences point so strongly and overwhelmingly in favor of one party that ... reasonable men could not arrive at a contrary verdict." *Id.* at 133 (citation omitted).

## III. ANALYSIS

### A. Jurisdiction

■ Metro Dade County challenges the court's exercise of jurisdiction over the claims of Parker and OPIC. Metro Dade argues that because Parker no longer has an interest in Taino Farms, and because OPIC merely is a third party lender, neither as-

serts his own rights and thus lacks standing. This lack of standing, argues Metro, deprives the federal court of Article III "case or controversy" jurisdiction. Metro Dade is wrong. The *jus tertii* doctrine, which generally prohibits one party from litigating another's rights, is a prudential rather than a constitutional rule of standing, and accordingly may be disregarded by the federal courts in the interest of justice. *See* Charles A. Wright, *Federal Courts* § 13, at 79–83 (5th ed. 1994).

Nonetheless, we find it unnecessary to decide whether Parker and OPIC are asserting their own rights or those of Taino Farms.[1] Neither defendant raised the standing issue at trial. Although Metro Dade argues the issue involves jurisdiction and may be raised at any time, as we discussed above, this position is incorrect. Accordingly, because the standing issue was not raised in the district court and in view of the agreement as to the division of any damage award, we will address it no further.

### B. Findings of Fact

#### i. Agency

##### a. Florida Law

Florida agency law, which controls this diversity case, is well established:

> Whatever evidence has a tendency to prove an agency is admissible, even though it be not full and satisfactory, and it is the province of the jury to pass upon it. Direct evidence is not indispensable—indeed, frequently is not available—but instead circumstances may be relied on, such as the relation of the parties to each other and their conduct with reference to the subject-matter of the contract. And, notwithstanding the alleged principal and agent are the only witnesses called, and they both categorically deny the existence of the relation, the jury have the right to weigh and consider the whole of the evidence and the fair and reasonable inferences that might be drawn therefrom, and

> they may be entirely justified in disregarding the 'Yes or No' answers and in reaching the conclusion that the evidence as a whole is sufficient to prove the relation of agency to exist.

*Watkins v. Sims,* 81 Fla. 730, 88 So. 764 (1921).

Under Florida law, actual authority is not a prerequisite to finding an agency. "Under the doctrine of apparent authority, an agency will arise when the principal allows or causes others to believe that an individual has authority to conduct the act in question, inducing their detrimental reliance." *Borg–Warner Leasing v. Doyle Elec. Co., Inc.,* 733 F.2d 833, 836 (11th Cir.1984) (applying Florida law). "Apparent agency can arise even in the face of the principal's silence when the principal by its actions creates a reasonable appearance of authority." *Id.; Stiles v. Gordon Land Co.,* 44 So.2d 417, 421–22 (Fla.1950). Authority need not be conferred in express terms, but may be "implied under justifying circumstances." *City Nat. Bank of Detroit v. Basic Food Indus. Inc.,* 520 F.2d 336, 337 (5th Cir.1975) (applying Florida law). Moreover, a broker can become an agent when the principal creates the reasonable appearance of authority, even if the third party knew the alleged agent was an independent broker. *Borg–Warner,* 733 F.2d at 836.

The policy for this law is clear: "When one person acts for another who accepts the fruits of his efforts, the latter is deemed to have accepted the methods employed, and he may not, even though innocent, receive such benefits and at the same time disclaim responsibility for the means by which they were acquired." *Standard Oil Co. v. Nickerson,* 103 Fla. 701, 138 So. 55 (Div. B. 1931).

In Florida, the jury decides whether circumstance creates an agency, "unless the evidence is susceptible to but one interpretation". *Amerven, Inc. v. Abbadie,* 238 So.2d 321, 322 (Fla. 3d Dist.Ct.App.1970).

---

1. Mr. Daniels, the Appellees's Counsel, orally argued Bahamian law grants OPIC and Parker rights to repayment and redemption that may affect their standing under Bahamian law. We find no need to address this issue, however.

Unquestionably, Taino has standing to sue and Parker and OPIC have an enforceable, stipulated agreement with Taino for allocation of proceeds whether they were proper parties or not.

*b. Application of Florida Law to the Facts*

 The district court correctly submitted the evidence to the jury to decide whether the District acted as agent for Metro Dade.

The record is replete with evidence that, viewed in the light most favorable to the plaintiffs, supports a jury finding that agency existed. For instance, workers for both the District and Metro Dade testified that when the District could not afford a power screen essential to its operation, Metro Dade lent it the money and set repayment as a $2.00 per ton increase in the sludge price. (R. 22–2610; 18–1918). Further, Cort Greenfield, the First District Conservationist for the District testified as follows: Bob Fergen[2] of the Metro Dade Water and Sewer Authority approached the District and asked the District to help the Authority dispose of sludge (R. 18–1919); the District agreed and understood their responsibility to be marketing and the County's responsibility to be providing safe sludge and analysis. (R. 18–1925–26).

Jack Campbell, Chairman of the Board of the District, testified that the District asked the Authority to give Parker a volume discount. The Authority consented. The District needed to move substantial quantities of sludge out of drying beds so the Authority could proceed with its plant construction; the District believed lowering the price would encourage sales and enable it to quickly move the sludge and hasten construction. (R. 18–1909–10).

James Cowgill, Sr., a professional engineer and employee of the Authority at the time in question, testified about the relationship between the Authority and the District. He testified that whenever the agreement between the two bodies was altered, they had to go through the County Commissioners (R. 21–2574); One time, the Authority cut its price in half so the District's customers, who had lost their crops to freeze and canker disease, could afford the sludge (R. 18–2610–11); The Authority set up a pay scale so that the more sludge the District sold, the lower the price to the District would be (R. 18–2612); The Authority at one time lowered the sludge price and lent the District money after auditing the District's books to see where the money and sales were going (R. 18–2572); And "a lot of times [the Authority] didn't get [the District] the equipment [they] had requested] because [the Authority] figured they could do as-is." (*Id.*)

All of the foregoing evidence, when viewed in the light most favorable to plaintiffs, including all reasonable inferences to be drawn therefrom, suffices to support the jury finding that agency existed. We cannot say the facts and inferences point so strongly and overwhelmingly in favor of the defendants that reasonable people could not have reached this verdict for plaintiffs. Accordingly, we affirm the jury finding that agency existed.

### ii. Liability

 The one thing clear from the verdict is that the jury found Metro Dade liable for the damage to Taino Farms, Ltd.

Considering the evidence and all reasonable inferences in the light most favorable to the plaintiffs, we cannot find that facts and inferences point so strongly and overwhelmingly in favor of either defendant that reasonable people could not have reached this verdict. *See Pearce*, 590 F.2d at 133; *Maccabees*, 941 F.2d at 1183–84. Accordingly, we affirm the verdict and the district court's denial of judgment n.o.v. as to liability.

### iii. Damages

 The jury found the defendants liable to the plaintiffs under all three theories presented to it on the verdict form: breach of contract, negligence, and strict liability. On the theory of breach of contract, the jury awarded Parker $30,000; OPIC $5,000; and Taino Farms $15,000. On the theory of negligence, the jury awarded Parker $30,000; OPIC $5,000; and Taino Farms $15,000. In addition, based on the theory of strict liability, the jury awarded Parker $4,200,000; OPIC $600,000; and Taino Farms $2,000,000. Total damages awarded by the jury equal

---

**2.** William Parker alleges Bob Fergen is the person who initially, through Fergen's brother in the Bahamas, contacted Parker about using daorganite at Taino Farms.

$4,260,000 to Parker; $610,000 to OPIC; and $2,030,000 to Taino Farms.

In its motion for a new trial, Dade County contended, *inter alia,* that it was entitled to a new trial because the jury assessed damages differently for each of the three counts despite the fact that the proof of damages was identical for each of the counts, and that the jury awarded duplicative damages. The district court found that because Dade County's counsel did not request the court to resubmit the verdict forms to the jury for further consideration before the jury was discharged, Dade County waived any objection to the inconsistency of the verdict. (R10–370–43). *See Geneva County Bd. of Educ. v. CNA Ins. Co.,* 874 F.2d 1491, 1497 n. 6 (11th Cir.1989). The district court further found that because the jury disobeyed instructions not to aggregate or apportion damages covering the claims and was asked not to render a total damage award, there was a serious risk that the damages awarded in negligence and breach of contract were duplicative of damages already awarded in strict liability. (R10–370–44) The district court denied Dade County's motions for JNOV and for a new trial and entered judgment against Dade County for the strict liability claim only in the amount of $6,675,000. (R10–369–1).

Upon review of the record for an abuse of discretion, we find that the jury instructions and verdict forms were confusing and unclear, resulting in confusing damage awards. The record also reflects, however, that the jury's answers to the special interrogatories accompanying the verdicts are logical and consistent and that the jury clearly found defendants liable under all three theories of breach of contract, negligence, and strict liability. Since the record provides ample support for these conclusions, we find that the district court abused its discretion in disregarding the jury verdicts as to the negligence and breach of contract claims. *See* Fed. R.Civ.P. 49(b); *Austin–Westshore Constr. Co., Inc. v. Federated Dep't. Stores,* 934 F.2d 1217, 1224 (11th Cir.1991). Because the liability issues were properly and clearly decided by the jury, the remedy in this instance is to remand the case to the district court for a new trial on the amount of damages only.

*See Burger King Corp.,* 710 F.2d at 1487–88; *Stancill v. McKenzie Tank Lines, Inc.,* 497 F.2d 529, 534 (5th Cir.1974).

Because the jury has clearly decided that the defendants are liable under all three theories and because the plaintiffs have stipulated among themselves how to divide any damage award, the sole question remaining for the jury in the new trial is: What total amount of damage did the daorganite cause in this case?

## IV. CONCLUSION

We hold that the jury's findings on liability and agency are supported by the record. Accordingly, we AFFIRM those portions of the verdict on all three theories.

We hold that the verdicts regarding damages are so confused as to require a new trial. Accordingly, we REVERSE and REMAND for a new trial on damages.

AFFIRMED in part, REVERSED in part, and REMANDED.